COMMONWEALTH vs. MICHAEL DEMOGENES & another.[1]

Middlesex.    June 9, 1982. — November 2, 1982.

Present: PERRETTA, KASS, & SMITH, JJ.

*Search and Seizure,* Forcible entry by police, Multiple-occupancy struc-
ture, Warrant.  *Constitutional Law,* Search and seizure.

A search warrant was valid which accurately described and isolated which
of the multiple units of a building was to be searched, although it did
not identify the particular unit by naming the occupant nor describe
the means of access to the unit, where the circumstances presented lit-
tle likelihood that the wrong unit would be searched and where execu-
tion of the warrant was limited on its face to the officer whose surveil-
lance had been the basis for its issuance.  [581-583]
Police officers present at an apartment to execute a search warrant who,
after announcing their presence, observed a person inside the apart-
ment move away from the door while holding papers which the of-
ficers believed were evidence of gaming, did not violate the "knock
and announce" rule by breaking down the door ten seconds after a
subsequent demand for entry.  [583]

INDICTMENTS found and returned in the Superior Court
Department on December 29, 1980.

A motion to suppress evidence was heard by *Frederick T.
Doyle,* J., a District Court judge sitting under statutory
authority.

Application for interlocutory appeal was allowed by *No-
lan,* J., in the Supreme Judicial Court for the county of Suf-
folk and the case was transferred by him to the Appeals
Court.

*Kevin J. Ross,* Legal Assistant to the District Attorney, for
the Commonwealth.

*Frank R. Herrmann* for Channon J. Scot.

---

[1] Channon J. Scot.

*Steven H. Bowen (Nicholas Macaronis* with him) for Michael Demogenes.

PERRETTA, J. Pursuant to a warrant, the State police seized gaming paraphernalia from the premises located at 1116 Mammoth Road, Dracut. The defendants moved to suppress the evidence taken, alleging (1) that the warrant failed to describe with sufficient particularity the premises to be searched; and (2) that the officers violated the "knock and announce" rule in executing the warrant. The judge granted the motion on the first ground and denied it on the second. The Commonwealth obtained leave to appeal, and the defendants were authorized to cross appeal. Mass.R. Crim.P. 15(b)(2), 378 Mass. 884 (1979). We conclude that it was error to suppress the evidence.

1. *The Facts.*

Our review of the affidavit in support of the warrant, the warrant, the transcript of the hearing on the defendants' motions, photographs introduced in evidence, and the judge's findings of fact reveal the following. During the week of April 7, 1979, State Trooper Ronald J. Ford received information from an informant that one "Mike Demogenes" had been taking bets over a certain telephone, the number of which the informant gave to Ford. Ford's check on that number showed that the telephone was listed to Channon J. Scot, 1116 Mammoth Road, Dracut.

Ford began surveillance of the premises, a two and one-half story wood frame building. His check of a street directory disclosed that the building contained four apartments numbered 1116, 1118, 1120, and 1122 Mammoth Road. We describe the building as it would appear to one facing the front of the structure. Over the main front door to the building are the numbers 1118-1122. On the left side of the front, but slightly set back, is another door, facing Mammoth Road, off a small porch or stoop. The numbers 1116 are placed vertically next to that door, but they are partially obscured from view from the street by trees and a roof over the stoop. On the right side of the building there is an unnumbered door which faces onto a driveway which runs

from the street and well beyond the structure into the large rear yard of the premises. There is a window with an awning towards the back of the right side of the house, and there is one ground floor rear entrance to the building on the side of the house farthest from the driveway. This door is the rear entrance to the apartment number 1116. The building to the left of the premises in issue is a two-family house numbered 1112 and 1114.

Ford conducted his surveillance throughout most of April. At various times during this period, he observed vehicles, registered to the defendants, parked at or being driven to and from this building. He saw a man, identified at the hearings as Demogenes, leave the building by the rear door; on one occasion, Ford saw Demogenes through the window at the right side of the house.

It is unnecessary to recite the additional facts contained in Ford's affidavit as they add nothing to the description of the premises to be searched and are directed to the existence of probable cause for the search, an issue the defendants have abandoned on appeal.

On the information available to him, Ford obtained a warrant to search the "room or rooms that constitute or comprise the premises of #1116 Mammoth Road, Dracut . . . . This building being a 2½ story dwelling, wooden frame, color white with green shudders [sic], numbered 1118-1122 over front door this doorway leading to 2nd floor apartments, # 1116 (not being numbered) located on the first floor. The premise[s] will be identified by the affiant . . . Ford who will make service of this process" (emphasis added). The description in the warrant is identical to the language used by Ford in his affidavit in describing the premises he wished to enter.

Warrant in hand, Ford and two other troopers, all in plain clothes, entered the main front door of the building. One trooper carried a twenty-pound sledgehammer. Upon entering the building, they observed a stairway to the second floor to their left and an unmarked door to their right at the rear of the hallway. They knocked on that door and

asked for Channon Scot. The occupant of that apartment did not open the door but responded that Scot's apartment was next door.

The officers then went out the front door, walked around to the back of the house, opened the rear storm door, and knocked at a pane of glass in the inner wood door. Demogenes, with papers in his hand, came to the door and saw the three men, who identified themselves as police officers. They announced that they had a warrant to search the premises and ordered him to open the door. Upon seeing Demogenes turn away from the door and walk quickly towards another room, the police hammered the door two to three times and entered the apartment.

Ford testified at the hearing that he knew from his surveillance that the rear door led into apartment number 1116 but that he never saw those numbers on the left front door. He also knew that the apartment in question was on the first floor, but he did not know whether there was another unit on that floor. Ford stated that he and his fellow officers decided that it would be more common for strangers to knock on the front rather than the rear door, and, hence, they used the front entrance to the building.[2] When they discovered that there was another unit on the first floor and that there was no access to apartment 1116 from the center hallway, they went around to the back yard and knocked at the rear door.

The judge found that the warrant referred to apartment 1116 as "not being numbered" because, as Ford testified, he had not seen the vertical numbers on the left front door before he applied for the warrant. The judge further found that when Ford went to the door to the right of the center hallway, he believed that it "comprised part of 1116 Mammoth Road." This finding is supported by Ford's testimony

---

[2] The officers did not have a "no knock" warrant, compare *Commonwealth* v. *Scalise*, 387 Mass. 413, 416-417 (1982), and were required to knock, identify themselves, and announce their purpose when executing the warrant. *Commonwealth* v. *Cundriff*, 382 Mass. 137, 145-147 (1980).

and is bolstered by the fact that Ford saw Demogenes in the window at the right side of the house during the surveillance period.

Based upon these findings, which were warranted by the evidence, the judge concluded that Ford "was mistaken as to what constituted the premises of 1116 Mammoth Road" and, as a consequence, there was a "reasonable probability" that the wrong premises would be searched. We are bound by the judge's findings of fact, but not by his conclusions. *Commonwealth* v. *Moon,* 380 Mass. 751, 756 (1980).

2. *The Search Warrant.*

The warrant accurately describes and isolates which of the multiple units of the building was to be searched and identifies the unit in question as located on the first floor. Compare the overbroad warrant discussed in *Commonwealth* v. *Erickson, ante* 501 (1982). However, it does not further identify the particular unit by naming the occupant, nor does the warrant set out the means of access to the apartment. In determining the sufficiency of this warrant, "[t]he standard is not whether the description given is technically accurate in every detail but whether it is sufficient to enable an officer to identify the place intended with reasonable effort, and whether there is a likelihood that another place might be searched." *Commonwealth* v. *Cohen,* 6 Mass. App. Ct. 653, 655 (1978), and cases therein cited.

There was little likelihood that the wrong apartment would be searched. We are not here concerned with what might have happened had the warrant been executed by an officer with no familiarity with the premises. Cf. *Commonwealth* v. *Gill,* 2 Mass. App. Ct. 653, 656 (1974). Execution of the warrant was limited on its face to Ford, who had memorialized the sum total of his knowledge in his affidavit. Moreover, the warrant did not excuse Ford from the requirement of knocking and announcing his purpose before seeking entry to the defendant Scot's apartment.

Although Ford initially knocked on the wrong, unnumbered door, his mistake does not appear to be the result of

an arbitrary, indiscriminate selection; it was the only inner door off the first floor hallway, and it was to the rear of the building. Knocking on that door was consistent with the observations Ford had made during his surveillance.

The defendants argue that the warrant could have been more specific but for Ford's negligent surveillance. They take him to task for not having entered the main hallway to look for an inner front door and for not having approached the left front door to check for identifying numbers. They suggest that these observations could have been attempted under darkness or when Ford saw that window shades were drawn.

We think it obvious that a prior observation of the inner unnumbered door off the right end of the hallway would not have dispelled Ford's reasonable belief that the door opened into unit 1116. Further, we do not think Ford was required to risk disclosure of the surveillance and jeopardize his investigation by an earlier approach to either of those doors.

While it was possible, and in fact happened, that the wrong door might be approached, there was little danger that another apartment would be searched mistakenly under the instant warrant. The warrant restricts its execution to Ford, cf. *Commonwealth* v. *Rugaber*, 369 Mass. 765, 769 (1976), and *Commonwealth* v. *Gill*, 2 Mass. App. Ct. at 656, and directs him to search only apartment 1116, located on the first floor. As recited in his affidavit, Ford knew that the apartment to be searched comprised, at least, the rear portion of the first floor and that it was occupied by the defendant Scot. Ford did all that he reasonably could have done to determine the front entrance to that apartment prior to obtaining the warrant. In executing the warrant, he acted consistently with his reasonable belief as to the layout of the building.

We hold the warrant valid, but we go further to say that if it were so ambiguous as to be defective, we would see no prophylactic value in. the application of the exclusionary rule in the circumstances of this case. See *Commonwealth*

v. *Rugaber,* 369 Mass. at 769; *Commonwealth* v. *Cohen,* 6 Mass. App. Ct. at 656. See also *Commonwealth* v. *Sheppard,* 387 Mass. 488, 498 n. 9 (1982). The officers did nothing unreasonable which we would seek to deter from happening in the future.

3. *The Entry.*

The judge found that when the officers knocked at the rear door and Demogenes appeared with papers in his hands, one of the officers, Sergeant Henderson, twice stated, "State Police, we have a search warrant, open up," and displayed his badge. The judge further found that when Demogenes turned and headed toward the front of the building, the officers believed that the papers were evidence of gaming and that Demogenes would destroy them, given the opportunity.

Based on these findings the judge concluded that the officers did not violate the "knock and announce" rule when, ten seconds after their last demand for entry, they broke down the door. There is no error in either the judge's findings or his conclusions. See generally *Commonwealth* v. *Scalise,* 387 Mass. 413 (1982).

4. *Conclusion.*

The order allowing the defendants' motion to suppress on the basis of a facial defect in the warrant is reversed, the order denying their motion on the ground of an illegal mode of entry is affirmed, and the case is remanded to the trial court for further proceedings.

*So ordered.*