COMMONWEALTH vs. KIM H. DOUGLAS
(and five companion cases[1]).

Hampshire. November 4, 1986. — January 26, 1987.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Arrest. Search and Seizure,* Warrant, Exigent circumstances. *Constitutional Law,* Search and seizure, Arrest.

Where there was no demonstrated basis in the record of a criminal case for finding that a State trooper, who had entered, without a valid warrant, a two-family house in which the defendants were subsequently arrested, had seen any crime committed for which any defendant could have been arrested at that time, even if it could be concluded that because of consent the trooper had lawfully entered the premises, the subsequent seizure of controlled substances and money used in a poker game could not be justified as having been incident to a lawful arrest. [143]

A search warrant describing the place to be searched as "premises to be identified by Trooper Sullivan prior to execution of the warrant" was invalid for its failure to satisfy the particularity requirements of G. L. c. 276, §§ 1 and 2, art. 14 of the Massachusetts Declaration of Rights, and the Fourth Amendment to the Federal Constitution. [143-145]

COMPLAINTS received and sworn to in the Ware Division of the District Court Department on August 20, 1984.

Pretrial motions to suppress evidence were heard by *George A. Sheehy, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Charles K. Stephenson,* Assistant District Attorney *(John E. Shea,* Assistant District Attorney, with him) for the Commonwealth.

*Anne Rideout* for Suzanne M. Smith & others.

[1] The other defendants are Daryl E. Heinicke, Kevin P. Lebeau, Joseph M. Pasterczyk, Gary A. Rainaud, and Suzanne M. Smith.

*Bernard J. Whalen, Jr.,* for Kevin P. Lebeau (*David G. Sacks,* for Gary A. Rainaud, joined in a brief).

WILKINS, J. The defendants, each charged with unlawful possession of one or more controlled substances and two charged also with playing poker for money, were successful in persuading a judge in the six-person jury session in Northampton to allow their motions to suppress evidence seized in an August 18, 1984, police raid on premises in Belchertown. The Commonwealth appealed, and we transferred the appeal to this court. At issue is whether the evidence could lawfully have been seized without a warrant and, if not, whether the seizures were lawful when made pursuant to a warrant that stated the premises to be searched were "to be identified by Trooper Sullivan prior to execution of the warrant." We affirm the order suppressing the evidence.

The facts were presented by stipulation. Trooper Kenneth Sullivan of the State police had been acting as an undercover narcotic agent in Hampshire and Franklin counties. He learned of weekly poker games held at various places early Saturday morning. The location was selected each week just before the bars closed. Large amounts of money were bet at the games, and drugs were sold and used. In his affidavit Sullivan stated that he believed that there would be a card game that night (Friday, August 17, 1984, into Saturday, August 18, 1984), at which large sums would be wagered and local dealers would be selling narcotics. He stated further that that night he would wear "a wire" which would be monitored by his immediate superior to whom he would relay the location of that night's game, either by the wire or by telephone. He added that, when all the players were seated, he would signal via the wire to execute the warrant.

The raid occurred at 3:30 A.M. on August 18, 1984, at a two-family house on 535 Federal Street in Belchertown. The second floor was rented; the first floor was not rented but was occupied by the owner's grandson. The card game was on the second floor. Two defendants were arrested in the first floor apartment, where a white powder alleged to be cocaine was found. The other four defendants were arrested on the second floor, and controlled substances and monies were seized.

1. The Commonwealth argues first that a warrant was unnecessary because Trooper Sullivan could have seized the suppressed evidence incident to lawful arrests. See G. L. c. 94C, § 41 (1984 ed.) (warrantless arrests for narcotic offenses committed in officer's presence); G. L. c. 271, § 10A (1984 ed.) (warrantless arrests for certain gaming offenses while officer lawfully on premises). In his findings and rulings, the motion judge did not discuss the legality of the seizure of the evidence on the ground that it was obtained incident to a lawful arrest; it is not clear that the Commonwealth relied on this theory below; and the record before us does not demonstrate that Trooper Sullivan saw offenses being committed by any defendant for which he or she could have been arrested. There is no indication as to what he did or saw at 535 Federal Street on that night. It is not shown that he ever was in the first floor apartment, and it can only be inferred that at some time that night he was in the second floor apartment. There is, therefore, no demonstrated basis for finding that Trooper Sullivan saw any crime committed for which any defendant could have been arrested at that time, even if we were to conclude that because of consent Trooper Sullivan was lawfully on the premises (a point the defendants do not discuss). See *United States* v. *Ruiz-Altschiller,* 694 F.2d 1104, 1107 (8th Cir. 1982), cert. denied sub nom. *Perry* v. *United States,* 462 U.S. 1134 (1983).

We conclude that the Commonwealth has not made a case for the seizure of the evidence incident to a lawful arrest. The Commonwealth makes no claim of exigent circumstances justifying a warrantless police entry into either apartment. See *Commonwealth* v. *Huffman,* 385 Mass. 122, 124-126 (1982); *Commonwealth* v. *Forde,* 367 Mass. 798, 800 (1975); *Payton* v. *New York,* 445 U.S. 573, 587-588 (1980). Thus, the seizure of any evidence suppressed by the trial judge can be sustained only if that evidence was seized pursuant to a lawful search warrant, the question to which we now turn.

2. The search warrant did not describe the place to be searched and, therefore, in these circumstances, fails to meet statutory (G. L. c. 276, §§ 1 and 2 [1984 ed.]) and constitutional requirements. Section 1 of G. L. c. 276 requires that a

search warrant name or describe the "place to be searched." Section 2 provides that "[s]earch warrants shall designate and describe the building, house, place, vessel or vehicle to be searched." Under art. 14 of the Massachusetts Declaration of Rights, a search warrant must contain "a special designation of the . . . objects of search." The Fourth Amendment to the Constitution of the United States requires that a search warrant "particularly" describe "the place to be searched." The purpose of these various provisions is to forbid general searches. See *Commonwealth* v. *Sheppard,* 394 Mass. 381, 389 (1985); *Commonwealth* v. *Pope,* 354 Mass. 625, 628-629 (1968).

Obviously a search warrant describing the place to be searched as "premises to be identified by Trooper Sullivan prior to excecution of the warrant" does not satisfy these requirements. That language in a search warrant eliminates the role of the neutral and detached magistrate and substitutes a "blank check" to be filled in by a designated police officer. Warrants of far narrower scope have been held to be too broad. See *Commonwealth* v. *Hall,* 366 Mass. 790, 799 (1975) (warrant for "certain rooms in the 2nd fl apt" did not extend to third floor); *Commonwealth* v. *Erickson,* 14 Mass. App. Ct. 501, 504 (1982) (warrant for search of entire multiple-occupancy building too broad when there was probable cause to search only one apartment).

The Commonwealth argues that the circumstances precluded advance identification of the premises to be searched and relies by analogy on cases involving anticipatory search warrants. Anticipatory search warrants typically relate to contraband in transit, where a specific described item is known to be on route to a specific person, often at a specified place, and the warrant is issued before the item reaches that person's hands or the premises to be searched. See *Commonwealth* v. *Soares,* 384 Mass. 149 (1981); *Commonwealth* v. *Weeks,* 13 Mass. App. Ct. 194 (1982). The usual requirement that the warrant be based on probable cause that the items are then on the premises to be searched is loosened when there is strong evidence that they will be on the premises when the warrant is executed. *Commonwealth* v. *Soares, supra* at 154-155. The belief that

the specific item will probably be in a specific place in the future justifies issuance of the warrant. A magistrate issuing such a warrant does not abandon his role. Moreover, practicalities justify the use of such an anticipatory warrant.

In the case before us, the delegation to the individual police officer is substantial and not closely circumscribed. The Commonwealth has not shown that time pressures made it impractical to include in the warrant the precise place to be searched. There may well have been time to submit to a magistrate, by supplemental affidavit, the location of the place to be searched, once Trooper Sullivan informed other law enforcement personnel of the location.

If we were ever to accept as lawful such a broad description of a place to be searched as appeared in this search warrant, the circumstances would have to be far more pressing than this record shows. The particularity requirement was not met here, and a police officer can never validate a general warrant through objectively reasonable reliance on the warrant. See *United States* v. *Leon,* 468 U.S. 897, 922-923 (1984); *Commonwealth* v. *Lett,* 393 Mass. 141, 145-146 (1984).

*Order allowing defendants' motions to*
*suppress affirmed.*