COMMONWEALTH vs. PATRICIA TREADWELL
(and a companion case[1]).

Middlesex. December 7, 1987. — May 10, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Arrest. Constitutional Law*, Search and seizure, Arrest. *Search and Seizure*, Warrant, Affidavit.

A search warrant describing the place to be searched as "the front apartment on the 2nd floor above apartment #17 located at 50C Memorial Road . . . having a yellow bumper sticker on it stating 'Make My Day'" when, in fact, the apartment actually searched, while bearing such a bumper sticker, was located above apartment 16, was invalid for its failure to describe adequately the premises to be searched, as required by G. L. c. 276, §§ 1 and 2, where the affidavit for the warrant contained information from two informants, both of whom specifically and unmistakably located the apartment to be searched "directly above No. 17," which, due to the location of the bumper sticker on a different apartment door, created an obvious ambiguity in the description of the place to be searched; where nothing indicated that the police had knowledge of facts sufficient to overcome the ambiguity in the description; and where, in effect, the warrant left the police with discretion to choose between the apartment directly above number 17 and the apartment with the bumper sticker on the door, even though probable cause existed to search only one apartment. [358-361] NOLAN, J., dissenting. O'CONNOR, J., with whom LYNCH, J., joins, also dissenting.

INDICTMENTS found and returned in the Superior Court Department on February 13, 1986.

Motions to suppress were heard by *Hiller B. Zobel*, J.

An application for an interlocutory appeal was allowed by *Lynch*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Mark W. Bennett*, Assistant District Attorney, for the Commonwealth.

[1] Commonwealth *vs*. Michael A. Treadwell.

*Mildred J. Gibson* for Patricia Treadwell.

*James R. Rosencranz* for Michael A. Treadwell.

ABRAMS, J. A single justice of this court allowed the Commonwealth's request for an interlocutory appeal, see Mass. R. Crim. P. 15 (b), as amended, 397 Mass. 1225 (1986), from a determination that evidence obtained during a search of the apartment of the defendant Patricia Treadwell must be suppressed because the "warrant . . . particularly and specially and specifically describe[d] an apartment located over No. 17 at 50C Memorial Road," which was not the apartment which was searched. The defendants are charged with possession of cocaine with intent to distribute.[2] The defendants filed motions to suppress in the Superior Court. After hearing, the Superior Court judge allowed the motions on the ground of misidentification of the place to be searched. For the reasons stated, we conclude that the judge correctly allowed the defendants' motions to suppress.[3]

We summarize the relevant facts from the affidavit that accompanied the application for the search warrant. On January 15, 1986, a reliable informant told Robert M. Spinney, Jr., of the Somerville police department that " 'he' [the informant] had observed the occupant of the 2nd-floor apartment at 50C Memorial Road [in Somerville] selling cocaine to various persons. . . . [The informant] described the apartment as being

---

[2] Patricia Treadwell also is charged with illegal possession of two firearms. G. L. c. 269, § 10 (*h*) (1986 ed.).

[3] On appeal, the Commonwealth also raises the argument that, even if the warrant is invalid, the evidence should be admitted under the so-called good faith exception to the warrant requirement under the Fourth Amendment to the United States Constitution. See *United States* v. *Leon*, 468 U.S. 897 (1984). At the hearing on the motions to suppress, the parties limited the issue to misidentification of the premises. The judge specifically ruled that the issue of good faith of the officers and probable cause would be reserved by him. Thus, these issues were not decided and are not properly before us. We add that we have not adopted the *Leon* good faith exception under art. 14 of the Constitution of the Commonwealth. In some contexts, we recognize that art. 14 affords more substantive protection to criminal defendants than prevails under the Federal Constitution. See *Commonwealth* v. *Upton*, 394 Mass. 363, 373 (1985). Whether we would adopt the good faith exception in a proper case is not determined in today's decision.

the front apartment on the 2nd-floor *directly above No. 17"* (emphasis added). On January 17, Spinney and another officer "parked in front of 50C Memorial Road watching *the* front apartment on the 2nd-floor" (emphasis added). Spinney saw a person in a white jacket enter the building and, moments later, "observed through a window the door of *the* 2nd-floor apartment open [and] a person wearing a white jacket walk in" (emphasis added). After a few minutes, the same person left the building, entered an automobile driven by someone else, and drove away.

The police followed the automobile, "observed it to be operating erratically," and pulled it over. The backseat passenger, who had been seen entering 50C Memorial Road, was found in possession of cocaine, and arrested. After reciting the Miranda warnings, see *Miranda* v. *Arizona*, 384 U.S. 436 (1966), Spinney asked the passenger about 50C Memorial Road. Spinney reported the answer in his affidavit as follows: "[The person arrested] stated that he had just purchased cocaine on [*sic*] the 2nd-floor apartment at 50C Memorial Road. *He stated that the apartment was above No. 17.* He also stated that the apartment was the front apartment [and] *his description of the location matched the description given to me by the reliable informant.* He stated that on the front door was a yellow bumper sticker stating 'Make My Day.' He stated that there was no number on the door." (Emphasis added.)

Based on the foregoing information, Spinney concluded that he had probable cause to search the second-floor front apartment, "above No. 17," at 50C Memorial Road in Somerville. A District Court judge agreed and issued a warrant authorizing an immediate search of "the front apartment on the 2nd floor above apartment #17 located at 50C Memorial Road . . . having a yellow bumper sticker on it stating 'Make My Day.'" Pursuant to this warrant, the police searched Treadwell's apartment.

The configuration of the apartments on the second floor at 50C Memorial Road, Somerville, is as follows. There are three apartments on the second floor, two of which are "front" apartments facing the street. The Commonwealth concedes that

Treadwell's apartment, which is a front apartment on the second floor, is *not* the apartment directly above apartment no. 17; Treadwell's apartment is above no. 16. Each apartment on the second floor has its own door.

The judge found as a fact that the only door bearing a bumper sticker with the words "Make My Day" is the door to Treadwell's apartment which, as already noted, is *not* the apartment "above number 17." The door also has a nameplate bearing the name "Treadwell."[4] The judge also found that the warrant specifically described and authorized a search only of the apartment directly above number 17. Accordingly, the judge excluded the evidence obtained during the search of Treadwell's apartment.[5]

The Commonwealth does not contest the fact that a warrant must describe particularly the place to be searched. The particularity requirement is statutory, see G. L. c. 276, §§ 1, 2 (1986 ed.), as well as constitutional. See *Commonwealth* v. *Douglas*, 399 Mass. 141, 143-145 (1987). "[T]he particularity requirements of G. L. c. 276 essentially track the particularity requirements of art. 14 [of the Declaration of Rights of the Constitution of the Commonwealth] and the Fourth Amendment [to the United States Constitution]." *Commonwealth* v. *Sheppard*, 394

---

[4] The Commonwealth offered testimony at the suppression hearing that the original informant had given the name "Treadwell" to the police and that Spinney and his partner believed at all times they were authorized to search the Treadwell apartment. However, the name "Treadwell" does not appear in the affidavit, and the space on the warrant for the name of the occupant was left blank. Thus, the judge correctly concluded, "we do not have a case in which the warrant authorized the search of an apartment in the premises occupied by Treadwell."

Under G. L. c. 276, we repeat that, on motions to suppress, "the judge may consider only the affidavit or affidavits presented to the magistrate." *Commonwealth* v. *Germain*, 396 Mass. 413, 415 n.4 (1985). *Commonwealth* v. *Monosson*, 351 Mass. 327, 330 (1966). Subsequent oral testimony cannot be relied on to establish probable cause, *id.*, or to expand the officer's knowledge.

[5] The motions to suppress relied on the Fourth Amendment to the Constitution of the United States, art. 14 of the Declaration of Rights of the Constitution of the Commonwealth, and violation of G. L. c. 276, §§ 1-3. The judge excluded the evidence "[i]n accordance with [his] reading of the Constitutions, statute, and cases . . . ."

Mass. 381, 389 (1985).[6] The issue here is "whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the search warrant." *Commonwealth* v. *Rugaber*, 369 Mass. 765, 768 (1976), quoting *United States* v. *Sklaroff*, 323 F. Supp. 296, 321 (S.D. Fla. 1971).

The Commonwealth argues that the "above No. 17" language in the warrant is a minor misdescription which does not render the warrant invalid as to Treadwell's apartment. We do not agree. The affidavit contains information from two informants, both of whom specifically and unmistakably locate the apartment to be searched "directly above No. 17." Significantly, the location of the apartment is the only consistent information from both informants.[7] We therefore cannot treat this information as irrelevant or inadvertent.

The Commonwealth seeks to salvage the warrant by arguing that "the knowledge of officers on the scene eliminated any danger of a mistaken search of the wrong apartment." Although the Commonwealth correctly notes that the knowledge of the executing officers can be a relevant consideration in resolving noncrucial ambiguities in a warrant, see *Commonwealth* v. *Rugaber, supra*; *Commonwealth* v. *Petrone*, 17 Mass. App. Ct. 914 (1983); *Commonwealth* v. *Demogenes*, 14 Mass. App. Ct. 577, 581 (1982), "police may not expand the warrant beyond those facts known to them." *Commonwealth* v. *Cefalo*, 381 Mass. 319, 329 (1980).

The record in this case fails to reveal that the police had knowledge of facts sufficient to overcome the ambiguity in the in the warrant. The affidavit does not indicate that the police

---

[6]No argument was made below and none is made in this court that art. 14 grants greater protection or requires greater particularity than the Fourth Amendment. We therefore do not discuss art. 14 separately. We leave that issue open.

[7]The first informant stated that the apartment was "directly above No. 17." The second informant's "description of the location matched the description given to [Spinney] by the reliable informant."

knew the name of the occupant of the apartment to be searched. See note 4, *supra*. In addition, neither the affidavit nor the testimony at the hearing demonstrates that the police had familiarity with the floor plan of the building. They did not know which apartment was no. 17, and made no attempt to locate that apartment. Moreover, although the affidavit states that Spinney saw the man in the white coat enter "the" front apartment, that information does not contradict the informant's specific, corroborated statement that he purchased cocaine in the front apartment "above No. 17." This is not a case in which the police gained familiarity with the premises through direct observation and then inadvertently misdescribed the premises in an affidavit. The police were given specific information, recorded it accurately, and then searched a different apartment.

The present case is distinguishable from those cited by the Commonwealth in which searches conducted pursuant to arguably ambiguous warrants were upheld. In *Commonwealth* v. *Rugaber*, *supra*, the warrant included the proper street address of the house to be searched and a description of the exterior of the building. The description, however, matched the house next door. Because the correct street address was used, we concluded that the warrant "was not inadequate on its face." *Id*. at 769. Further, in *Rugaber*, it was relevant that police officers on the scene had staked-out the correct house, knew its precise location, and could not possibly mistake it for a separate, free-standing structure. The danger of error was reduced even further because the search occurred at night when the inadvertent misdescription never became apparent.[8]

---

[8] In *Commonwealth* v. *Petrone*, *supra*, the Appeals Court never reached the issue of misdescription of the location of the apartment as on the "left hand side," when it actually was on the *right* hand side. *Id*. at 915. The defendant, who was named and described in the warrant, was arrested before the warrant was executed. After arrest, he led the police to the correct apartment and admitted them. In those circumstances, there was no possibility of searching the wrong apartment. In the present case, the police did not know the identity of the occupant of the premises to be searched, and no one led them to the correct apartment.

In *Commonwealth* v. *Demogenes*, *supra*, there was no ambiguity on the face of the warrant. The address was correct, and the location of the apartment was specified. *Id*. at 579. In addition, the executing officers knew the

In the present case, by contrast, the independently corroborated location of the apartment did not match the apartment searched; the police were unfamiliar with the interior floor plan of the building; their observations of the exterior of the building did not isolate with certainty which apartment or apartments the man in the white coat entered; and neither the warrant nor the affidavit indicated that the police knew the identity of the occupant of the apartment to be searched. The specificity of the apartment's location in the warrant and the location of the bumper sticker on a different apartment door created an obvious ambiguity in the description of the place to be searched. In effect, the warrant left the police with discretion to choose between the apartment directly above no. 17 and the apartment with the bumper sticker on the door, even though probable cause existed to search only one apartment. In these circumstances, we conclude that the warrant failed to describe adequately the premises to be searched, as required by G. L. c. 276, §§ 1 and 2. Thus, the judge properly allowed the motions to suppress.

*Order affirmed.*

identity of the defendant, as well as the occupant of the correct apartment. *Id.* at 578. The fact that the police initially knocked on the wrong, unmarked door in the building did not render the warrant deficient. Based on the information known to them at the time, the police were able to proceed quickly to the premises designated in the warrant.

In *Maryland* v. *Garrison*, 380 U.S. 79 (1987), the police knew the identity of the occupant of the premises to be searched, and were led by him to his third-floor apartment. *Id.* at 81. See *Petrone, supra*. The police made prior inquiries to determine whether "the third floor apartment" described in the warrant was divided into multiple units, and received reliable — albeit incorrect — information that it was not. *Maryland* v. *Garrison, supra* at 85 n.10. In addition, only one locked door opened onto the third floor. The United States Supreme Court concluded that the police neither knew *nor reasonably should have known* that there were two separate dwelling units on the third floor. *Id.* at 84-89. As a result, the court held the search of both units valid. In the present case, the ambiguity of multiple front apartments — one above no. 17, and the other with a bumper sticker on the door — was readily and objectively apparent to the police. Moreover, as the judge found, neither the police nor the assistant district attorney accompanying them made any attempt to determine whether the apartment searched was the apartment above no. 17.

NOLAN, J. (dissenting). I dissent. The trial judge erroneously allowed the defendants' motions to suppress. The warrant and accompanying affidavit described the premises with sufficient details to meet the constitutional muster. The fact that the apartment was misdescribed should not be fatal because Treadwell's apartment was the only apartment which sported a bumper sticker of any description. The officers acted in good faith. This is just another example of the court's straining for gnats in applying a very dubious exclusionary rule. It runs counter to good sense.

O'CONNOR, J. (dissenting, with whom Lynch, J., joins). I would reverse the judge's allowance of the defendants' motion to suppress, and I would remand for further findings with regard to the following questions: (1) Were the officers who executed the warrant unaware, at that time, of the ambiguity of the description in the warrant as it applied to the physical facts? (2) Based on information in addition to the description in the warrant, did the executing officers possess sufficient knowledge concerning the apartment to which the warrant was intended to apply to eliminate any danger of a mistaken search of the wrong apartment? The teaching of *Commonwealth* v. *Rugaber*, 369 Mass. 765 (1976), is that affirmative answers to those questions would require denial of the motion to suppress. There is no significant distinction between *Rugaber* and this case, and *Rugaber* was rightly decided.

In *Rugaber*, this court held that evidence of the fruits of a search conducted pursuant to a facially adequate, but ambiguous, warrant, by officers with first hand knowledge of what premises were intended to be governed by the warrant, should not be suppressed. In that case, the warrant ordered a search of "#3, Fenwick St., Springfield, a two story wooden frame dwelling, color red & grey." Number 3 Fenwick Street was a brick house with a green porch. The house next door was red, grey, and wooden. The officers who obtained the warrant executed it. They searched No. 3 Fenwick Street. They did so at night and were unaware of the discrepancy in house

descriptions. *Id.* at 767. The officers "were not reckless; at most they were negligent in this respect." *Id.*

In *Rugaber, supra* at 768, the motion judge "concluded that an officer attempting to execute the warrant with no information other than the description contained within it and the attached affidavit would 'most assuredly' have invaded the wrong property." This court observed that "[p]erhaps it would be more accurate to say that the warrant was ambiguous in its description of the property to be searched." *Id.* That is precisely the case here.

The court reasoned in *Rugaber, supra* at 769, as follows: "The description here was not inadequate on its face. The executing officers did not become aware of its ambiguity as applied to the physical facts, and they were not reckless in this respect. They had probable cause to search No. 3 Fenwick Street, the address was a sufficient description if the erroneous references to color and type of building material were disregarded, *and the knowledge of the officers on the scene eliminated any danger that there might be a mistaken search of the premises next door*. In these circumstances we agree with the judge, who ruled that even if the warrant was defective, the exclusionary rule should not be applied, since it could have no deterrent effect." (Emphasis added.)

In the present case, too, the warrant was adequate on its face, for it described with particularity, although inaccurately, the place to be searched. However, as in *Rugaber*, the description in the warrant was ambiguous. It described the apartment to be searched as being located over apartment no. 17 and displaying a "Make My Day" sticker on its door, while only one apartment actually displayed such a sticker and a different apartment was over apartment no. 17.

The judge made no finding with respect to whether the officers were aware of the ambiguity when they executed the warrant, but the evidence strongly suggests they were not. Nothing in the evidence suggests that the officers acted recklessly in this respect. Furthermore, the officers had probable cause to search the defendant's apartment and, as in *Rugaber*, the description in the warrant was sufficient if "the erroneous

references to [location over apartment no. 17] were disregarded."

Most importantly, there was an abundance of evidence presented at the suppression hearing in this case that "the knowledge of the officers on the scene eliminated any danger that there might be a mistaken search of the [apartment over apartment no. 17]." Two officers, who applied for the warrant and executed it, testified. Their testimony would have warranted findings that, on January 17, 1986, the officers were in a parked vehicle, engaged in surveillance, when they observed another vehicle drive up to the building at 50C Memorial Road. They watched an individual alight from the vehicle, take money from his pocket, and enter the building. Because the window shades were up, they could see into the apartment on "the second floor, upper right." That is the apartment with the "Make My Day" sticker on its door that they ultimately searched. They watched the individual enter and leave the apartment and return to the vehicle in which he had come. The officers followed that vehicle to another location and, when it stopped, they approached it and found the individual, whom they had seen enter and leave the apartment, holding glassine bags containing a white powdery substance. They arrested and talked to him.

According to the testimony, the individual described the defendant's apartment, including its location on the second floor at the upper right of the building as one faces the building from the street. In addition, there was testimony that, before they approached the defendant's apartment to search it, the officers had been told that the apartment they wanted to search and to which the warrant was intended to apply belonged to Patricia Treadwell. Then, when they arrived at the apartment, they saw the name Treadwell on the door. There was also evidence that the officers gained entry by saying, "Craig sent me." Upon the saying of those words, the door to the apartment was immediately opened by Michael Treadwell. They did not know his name, but he fit a description given to the officers by the individual whom they had seen in that apartment and arrested.

Nothing in the record suggests that the judge rejected any of the suppression hearing testimony as lacking credibility. Rather, it appears that he disregarded it as irrelevant. However, the evidence as to the officers' lack of awareness of the ambiguity in the description in the warrant, as well as the evidence concerning the officers' knowledge concerning the proper apartment to search, was highly relevant. If believed in substantial part, the evidence demonstrates that, even if the warrant was defective, the exclusionary rule should not be applied because it would not deter the type of police misconduct the rule was designed to deter. That is the teaching of *Rugaber*, and it is sound. I would reverse the order below, and remand for further findings.