The defendant, Jose Ortiz-Lopez ("Ortiz-Lopez"), is charged with trafficking in more than 36 but less than 100 grams of cocaine, unlawful possession of a firearm and ammunition, and being an armed career criminal.[1] He moves to suppress all evidence seized by police during the execution of a search warrant at 34 Shattuck Street, Lawrence, under the Fourth Amendment to the United States Constitution, art. 14 of the Massachusetts Declaration of Rights, and G. L. c. 276. Following a hearing, and for reasons set forth below, Ortiz-Lopez's motion to suppress is
DENIED.
            I. The Search Warrant
            The details of the investigation into Ortiz-Lopez's alleged drug-distribution activities are captured in a 78-page affidavit submitted by MSP Sergeant (now Lieutenant) Robert Noonan
("Noonan") (the "Noonan Affidavit") in supp01t of his application for a search warrant. Between October 2023 and February 2024, Massachusetts State Police ("MSP") detectives made twelve controlled purchases of fentanyl from Ortiz-Lopez and his associates with the assistance
 
--------------------------------------------
 
[1] Another indictment charges Ortiz-Lopez with unlawful possession of a firearm while committing a felony, specifically trafficking in 200 grams or more of fentanyl. The government filed a nolle prosequi with respect to the fentanyl trafficking charge, however, after a chemical analysis revealed the substance contained no such drug.
 
                                                            -1-
 
of a confidential informant ("CI").  Police also conducted undercover surveillance of Ortiz- Lopez and utilized a court-authorized pole camera trained at 34 Shattuck Street in furtherance of their surveillance efforts. The building at 34 Shattuck Street has a front entrance and an entrance on its left side (as viewed from the street).  It also has two garage doors at the rear of the building. Separate, detached garage storage bays form a horseshoe shape around the left, right, and rear of the structure at 34 Shattuck Street, separated by a driveway.
            During physical and video surveillance, police observed Ortiz-Lopez entering and exiting the left side door to 34 Shattuck Street on numerous occasions. On one occasion, the defendant appeared to use keys to gain entrance to the building through the door. On another occasion, Ortiz-Lopez entered 34 Shattuck Street through the left side door and emerged seconds later to sell a quantity of fentanyl to the CI, who stood outside the building. Surveillance also revealed the defendant leaving 34 Shattuck Street through the left side door, entering vehicles (including the two vehicles for which search warrants later issued), and engaging in conduct consistent with street-level narcotics distribution. Additionally, detectives noted that Ortiz-Lopez and his associates would park vehicles at 34 Shattuck Street and access the right rear side garage bay, which was interiorly connected to the left side door of the 34 Shattuck Street structure.[2]
            On February 7, 2024, a judge of this Court issued a warrant authorizing the search of 34 Shattuck Street, garage storage bay 9 at that address, the person of Ortiz-Lopez, Ortiz-Lopez's  cellphone, and two vehicles. The warrant authorized the search of the locations, vehicles, and 
 
--------------------------------------------
 
[2] Troopers also saw Ortiz-Lopez and one of his vehicles inside garage storage bay 9, which is housed in the detached  garage behind and to the left of 34 Shattuck Street. Surveillance on different dates further revealed another vehicle registered to Ortiz-Lopez parked in front of that specific bay as well as Ortiz-Lopez walking to and from the direction of garage storage bay 9. The defendant does not challenge the search of that location, however, in his motion to suppress. 
 
 
                                                            -2-
 
Ortiz-Lopez for, among other things, fentanyl, cash, drug-distribution records, and other paraphernalia associated with the drug-distribution trade.[3]
            At the initial hearing on September 10, 2025, Ortiz-Lopez, did not contest that the warrant application establishes probable cause to search 34 Shattuck Street for fentanyl and paraphernalia related to its distribution. Rather, Ortiz-Lopez argues that upon executing the warrant, police realized that 34 Shattuck Street was not a single-family residence as described in the warrant, but that it housed storage units; therefore, Ortiz-Lopez contends, the warrant did not authorize police to search an interior lower storage unit inside 34 Shattuck Street and an unconstitutional warrantless search of that storage unit occurred.
            A. The Particularity Requirement
            Ortiz-Lopez's argument touches to some extent on the threshold issue of whether the warrant sufficiently described 34 Shattuck Street. Because police may search only the premises described in the warrant, Commonwealth v. Wills, 398 Mass. 768, 774-775 (1986), the warrant application must describe with reasonable particularity the place to be searched, Commonwealth v. Saleh, 396 Mass 406,411 (1985). "The particularity requirement is statutory, see G. L. c. 276, §§ 1, 2, as well as constitutional." Commonwealth v. Treadwell, 402 Mass. 355,358 (1988). Our appellate courts "make no distinction between art. 14 and the Fourth Amendment in [their] analysis [of the particularity requirement]." Commonwealth v. Walsh, 409 Mass. 644 - 645 (1991) (citations omitted); see also Commonwealth v. Valerio, 449 Mass. 562, 566 (2007) (" Our cases do not distinguish between the statutory requirement of particularity, as set forth in G. L. c. 276, § 2, and the requirements of particularity under the Constitutions of the Commonwealth and of the United States.").
 
--------------------------------------------
 
[3] The warrant also authorized investigators to search Ortiz-Lopez's cellphone for evidence related to drug trafficking.
 
                                                            -3-
 
            The Supreme Judicial Court ("SJC") has "stated that the dual purposes of the particularity requirements of G. L. c. 276, § 2, and art. 14 are (1) to protect individuals from general searches and (2) to provide the Commonwealth the opportunity to demonstrate, to a reviewing court, that the scope of the officers' authority to search was properly limited." Valerio, 449 Mass. at 566-567.  In his affidavit, Noonan included a detailed description of the premises at 34 Shattuck Street and the surrounding garage storage bays. See Noonan Affidavit at p. 69. Noonan also included in his affidavit photographs depicting the exterior of 34 Shattuck Street and pinpointing the building's exact location. Id. at p. 70. Addendum B, attached to and incorporated in both the application and warrant, likewise identifies and describes in detail the building at 34 Shattuck Street. The search warrant's description of the premises "is sufficiently complete to allow the executing officer to locate and identify the place to be searched with reasonable effort, and there is [no] reasonable probability that a place other than the one intended to be searched under the warrant might be mistakenly searched." Walsh, 409 Mass. at 645 (citations omitted).  The warrant on its face therefore authorized a search of the premises at 34 Shattuck Street.
            Ordinarily, that would end this court's inquiry. See Commonwealth v. Morin, 478 Mass. 415,425 (2017) (probable cause inquiry limited to "the facts contained within the 'four corners of the [warrant] affidavit' ... , and the reasonable inferences to be drawn from them") (internal and external citations omitted); Treadwell, 402 Mass. at 358 n.4 ("judge may consider only the affidavit or affidavits presented to the magistrate.' ... Subsequent oral testimony cannot be relied on to establish probable cause, ... , or to expand the officer's knowledge."). However, given the thrust of Ortiz-Lopez's argument, the court conducted an evidentiary hearing which focused on the execution of the warrant at 34 Shattuck Street and the scope of the ensuing search.
 
                                                            -4-
 
II. The Search Warrant Execution
            On February 2, 2026, the court heard testimony from Noonan and received one exhibit in evidence (the search warrant, application, and return). Ortiz-Lopez did not testify. The court finds Noonan's testimony truthful and accurate on the relevant and material points set forth herein.
            Noonan and other troopers assigned to the Attorney General's Office executed the search warrant by knocking on the front and side doors to 34 Shattuck Street, and upon receiving no response, they breached both doors to gain entry. Inside the front entrance of 34 Shattuck Street police observed a small one-room office. This office had one method of egress and ingress - through the front door - and was inaccessible from the section of the building to which entrance was gained through the left side door. A search of the room disclosed paperwork indicating that Ortiz-Lopez rented a storage unit on the lower level of 34 Shattuck Street.
            Police also entered the building through the left side door. After gaining entry, troopers came upon a small landing. To their right was a closet-type storage room (designated interior storage unit #1).[4] A search of this room uncovered no contraband or items of evidentiary significance. To their left was a wall followed by a set of approximately fifteen stairs descending to a lower level. At the bottom of these stairs, troopers came upon another small landing. To their left was a small room housing a furnace. To their right was a locked door that police breached to gain entrance. Inside the room (designated interior storage unit #2), which was larger than interior storage unit#1, troopers found a Ruger firearm, a plastic bag containing white powder, and a bottle of lactose.
--------------------------------------------
 
[4] Police designated the rooms by number for purposes of the search. The court heard no evidence, and thus it does not find, that the rooms were assigned numbers prior to the arrival of investigators.
 
                                                            -5-
 
            It is not seriously disputed that the police in this case neither knew nor had reason to believe 34 Shattuck Street was anything other than a single-family dwelling at the time the warrant was issued. See Commonwealth v. Carrasco, 405 Mass. 316, 323-324 (1989) (upholding search of two apartments on second floor of building where affidavit described premises to be searched as "2nd floor" and police did not know and had no reason to know there were two apartments on the second floor). Cf. Commonwealth v. Luna, 410 Mass. 131, 134-135 (1991) (noting that officer who knows or has reason to believe more than one apartment in target building must identify specific apartment to be searched in warrant application). The property itself was a single "cottage" with one front and side entrance, one mailbox, one address number (34), and one utility service meter. Police surveillance placed only Ortiz-Lopez and his acquaintances coming and going from the left side door and rear garage bay during the investigation. They had no knowledge of anyone else using the structure. It was not until police gained entrance into 34 Shattuck Street that Noonan and other detectives realized for the first time that the building was not a single-family home as described in the warrant.
            Relying on the Appeals Court's decision in Commonwealth v. Hanson, 106 Mass. App. Ct. 305 (2025), Ortiz-Lopez argues police should have stopped the search immediately and applied for another warrant upon realizing that the premises was not a single-family dwelling but comprised of an office and storage rooms. In Hanson, the Appeals Court held that a warrant authorizing the search of the defendant's first-floor apartment in a two-family home did not authorize the search of the defendant's second-floor apartment in the same dwelling.5 Id. at 309.
 
--------------------------------------------
 
[5]  The Court also held that the second-floor apartment was not within the curtilage of the first-floor  apartment. Hanson produced  a concurring  opinion (Grant, J.) and a dissenting opinion  (Hand, J.)  Citing Commonwealth v. Hall, 366 Mass. 790, 800 n.11 (1975), the concurring justice noted that had the motion judge ruled the description of the premises could be "construed more liberally" and denied the motion to suppress, she would have upheld that ruling. See Hanson, 106 Mass. App. Ct. at 316. The concurrence also opined that the author of the decision  went  "too far" in interpreting the constitutional particularity requirements "as applied to a search warrant for a multiunit building, to require the warrant to specify the 'unit(s) to be searched' and to 'exclud[e] all other units in the
 
                                                            -6-
 
In reaching its decision, the Court in Hanson relied on a line of cases beginning with Commonwealth v. Hall, 366 Mass. 790 (1975). In Hall, police obtained a warrant to search the defendant's second-floor apartment in a three-story building which had one apartment on each floor. Id. at 791. While searching the second-floor flat, investigators learned the defendant owned the building, had keys to the third-floor apartment (which was vacant), and stored narcotics inside that apartment. Id. Officers then searched the third-floor apartment and discovered large quantities of cocaine and marijuana. Id. at 792. The SJC found the search unlawful, concluding that different apartments located in one building "are as distinct as separate dwelling houses, so that a separate warrant on probable cause is ordinarily needed for each." Id. at 800. The Court explained, "The authority to search is limited to the place described in the warrant and does not include additional or different places." Id. at 799 (citation omitted).
            The warrant here explicitly authorized a search of 34 Shattuck Street in its entirety. Unlike Hall and Hanson, this case does not involve police searching a location different from the location identified and described in the warrant.  That the building Ortiz-Lopez regularly accessed was used for storage instead of residential occupancy does not, at least in the circumstances here, invalidate the legality of the search pursuant to the warrant. See Commonwealth v. Scala, 380 Mass. 500, 508-509 (1980) (warrants are to be "read without poetic license" but that proscription "is not also a proscription of common sense") (citation omitted). Both storage units were accessible via the very door through which Ortiz-Lopez came and went, including at times to conduct narcotics transactions. Pursuant to the warrant, investigators could validly search any area, place, or container inside the premises capable of holding fentanyl and
 
--------------------------------------------
 
building."' Id. The dissent on the other hand concluded after a review of  past precedent, "Because the evidence in the instant case established that the first-and second-floor apartments were, for all practical purposes, a single home and in no sense separate apartments, I conclude that the second-floor apartment was 'part and parcel' of the same dwelling identified in the search warrant as [the first-floor apartment]." Id. at 322.
 
                                                            -7-
 
drug-distribution paraphernalia. See Commonwealth v. Pierre, 71 Mass. App. Ct. 58, 63 (2008) (warrant authorizing police to search for cocaine and drug-distribution records permitted search of cardboard boxes in storage locker). Their plain view observation and seizure of the firearm, white powder, and lactose inside the lower storage unit was lawful. See Commonwealth v. Sheridan, 470 Mass. 752, 759 (2015) (discussing plain view doctrine); Commonwealth v. Ivarson, 106 Mass. App. Ct. 431, 437-438 (2026) (discussing plain view seizure of items not mentioned in warrant during execution of search warrant).
            If anything, police stand on shakier constitutional grounds in their search of the front office, which upon executing the warrant they learned was separate and inaccessible from the section of the building that Ortiz-Lopez regularly accessed. The parties do not meaningfully address the legality of that search.
            Leaving to one side that the warrant authorized a search of the entire premises of 34 Shattuck Street, there is a threshold consideration at play here. While the concept of "standing" is now a relic of the past, the defendant nevertheless bears the burden of establishing that the government intruded upon his reasonable expectation of privacy in violation of constitutional rights that are personal to him. See Commonwealth v. DeJesus, 489 Mass. 292,293, 295-296 (2022). Ortiz-Lopez's affidavit submitted in support of his motion to suppress makes no mention of the front office whatsoever, and Noonan's affidavit does not recount any observations of the defendant accessing the front entrance of the building. Ortiz-Lopez is not charged with a possessory offense arising from items seized from that office.  Nor is he charged with "possessing contraband at the time of the search and, also at the time of the search, the property was in the actual possession of a codefendant or in a place where the codefendant had a reasonable expectation of privacy ...." Id. at 296-297. In these circumstances, the court
 
                                                            -8-
 
concludes Ortiz-Lopez does not have a subjective expectation of privacy in the contents of the office nor does he have an expectation of privacy that society would recognize as reasonable. See Commonwealth v. Montanez, 410 Mass. 290,301 (1991) (measure of defendant' s expectation of privacy in physical area entails subjective and objective analysis). Thus, as it relates to Ortiz- Lopez, a search of the front office in the constitutional sense did not occur.
            In short, because the warrant permitted the search of 34 Shattuck Street for fentanyl and drug-distribution paraphernalia, officers did not exceed the scope of their search when they searched "the lower storage unit" inside that location, and Ortiz-Lopez has not shown that a search in the constitutional sense occurred when officers entered the separate front office and located paperwork associated with him.
ORDER
            For the foregoing reasons, Ortiz-Lopez's motion to suppress (Paper No. 11) is DENIED.
So Ordered
/s/William F. Bloomer
Justice of the Superior Court
Date:
February 11, 2026