## COMMONWEALTH *vs.* FERNANDO TOLEDO
## (and a companion case[1]).

No. 05-P-1010.

Suffolk. March 7, 2006. - July 12, 2006.

Present: LAURENCE, BERRY, & DOERFER, JJ.

*Search and Seizure,* Warrant, Affidavit, Probable cause. *Practice, Criminal,* Warrant, Motion to suppress. *Probable Cause.*

The facts in an affidavit supporting an application for a search warrant were sufficient to establish probable cause to issue the warrant, where the informant supplying the information was not anonymous, the basis of his knowledge was established by his firsthand observation, and his veracity was reflected in his detailed description of the contraband in question and the plans for it, and where the police officer supplying the affidavit independently corroborated the information. [691-692]

A Superior Court judge properly denied a criminal defendant's motion to suppress evidence seized from his residence pursuant to a search warrant, where, although the warrant and an application for the warrant specified an address that differed from the address given in the executing police officer's affidavit in support of the warrant, and that was not the defendant's address, the executing officer's personal familiarity with the target locus of the search made up for any deficiencies or ambiguities in the description of the premises in the warrant. [692-700]

INDICTMENTS found and returned in the Superior Court Department on October 14, 2004.

A pretrial motion to suppress evidence was heard by *Charles J. Hely*, J.

An application for an interlocutory appeal was allowed by *Francis X. Spina*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

---

[1]*Commonwealth vs.* Pablo Charles Toledo. We note that the defendant is identified as both "Pablo Charles Toledo" and "Charles Pablo Toledo" in the materials before us. We use the defendants' first names not out of any disrespect but simply to avoid confusion.

*Chrystal A. Murray* (*Barry C. Abelson* with her) for the defendants.

*Paul B. Linn*, Assistant District Attorney (*William Freeman*, Assistant District Attorney, with him) for the Commonwealth.

LAURENCE J. Pursuant to a search warrant, Boston police officers seized firearms, ammunition, and drugs from the residence of defendant Fernando Toledo (Fernando) at 80 West Dedham Street, Boston. Fernando moved to suppress the evidence seized, asserting that (1) the warrant was constitutionally and statutorily invalid because it failed to describe with sufficient particularity the premises to be searched; and (2) the search was illegal because the affidavit in support of the warrant failed to establish probable cause. A codefendant, Pablo Charles Toledo (Pablo), joined in that motion.[2] After hearing arguments of counsel but without an evidentiary hearing, a Superior Court judge denied the motions to suppress. The defendants each filed an application for interlocutory appeal. See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996). Both applications were allowed and the cases reported to this court for determination. See *ibid.* Pablo subsequently filed a motion to intervene, requesting permission to join in the brief and argument of codefendant Fernando. See Mass.R.A.P. 16(j), 365 Mass. 863 (1974). We allowed that motion and consolidated the two appeals. See Mass.R.A.P. 3(b), 365 Mass. 846 (1974). We affirm.

*Background.*[3] We summarize the relevant facts from the affidavit filed in support of the search warrant.[4] On August 10, 2004, a confidential informant known as "Jibaro" told Officer Juan Jose Seoane of the Boston police department that a man, known to him only as "Fernando," was attempting to sell three

---

[2]A third codefendant, Omar Diaz, also moved to suppress the evidence. His motion was denied; however, he is not a party to the instant appeal.

[3]Throughout this section, we have added emphasis to key language quoted from the warrant application, supporting affidavit, and warrant.

[4]"[O]ur inquiry as to the sufficiency of the search warrant application always begins and ends with the 'four corners of the affidavit.' " *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995).

firearms[5] for at least $2,000. Jibaro described Fernando as a white Hispanic male, about fifty years old and six feet tall, with a light complexion and tattoos on both arms. Jibaro told Officer Seoane that he had seen the firearms inside Fernando's apartment that very day, shortly after noon, and that "Fernando resides in Villa Victoria at 80 *West Newton St.* apartment #1310 and his doorbell number is 0224." Jibaro also supplied Fernando's home and cellular telephone numbers and informed Officer Seoane that Fernando was "looking to sell [the firearms] today or tomorrow [at] the latest."

Following his receipt of this information, Officer Seoane immediately undertook several investigative efforts in an attempt to identify Fernando, including a reverse phone number inquiry, a motor vehicle license search, a board of probation check, and a firearm permit check. These inquiries revealed that the home phone number belonged to a Fernando Toledo of "80 *West Dedham St.*, Boston"; that a car was registered to a Fernando Toledo whose home address was "80 *West Dedham St.* apartment 1310, Boston"; and that the Fernando Toledo at that address had no license to carry any firearm, had been issued a firearms identification card that had expired in 1999, and was not listed as a legal gun owner.

Officer Seoane then contacted and met with Jibaro, who identified the motor vehicle license photograph of Fernando Toledo that Seoane had obtained as the same "Fernando" whom he had seen inside "80 *West Dedham St.* apartment #1310" with the firearms he had described. Based on Jibaro's information and the results of his own investigations, Officer Seoane's affidavit expressed his belief that Fernando Toledo "of 80 *West Dedham St.*, Boston," was illegally keeping the specified firearms in his apartment for sale and stated that Seoane was submitting the affidavit "in support of an application of [*sic*] a search warrant for 80 *West Dedham St.* Apartment #1310, Boston."

With the foregoing information in hand in affidavit form, Officer Seoane filed an application for a warrant to search for the specified firearms and related materials, as well as any personal

---

[5]The three firearms were specifically described by the informant as an AR15 machine gun with rounds, a black semiautomatic Beretta handgun with rounds, and a "snub" .357 caliber revolver with rounds.

papers or effects showing occupancy or control of "80 *West Newton St.* apartment #1310," "inside 80 *West Newton st.* apartment #1310, Boston," and all common areas "of 80 *West Newton St.* #1310." The application described the target building as a brown, multi-unit apartment building made of brick and concrete with "the number 80 *West Dedham* Poder Unidad" on top of the front entrance. Apartment 1310 was described as being on the thirteenth floor, to the left of the elevator, and the last apartment on the right side of the hallway.[6]

A Roxbury District Court clerk-magistrate issued a warrant on the basis of that application, authorizing a search of "80 *West Newton st.* apartment #1310, Boston." The warrant is essentially a verbatim copy of Officer Seoane's application; it mentions "80 *West Newton St.*" four times but describes the locus of the search as a "multi unit apartment building brick and concrete structure . . . [which] is brown and has the number 80 *West Dedham* Poder Unidad on top of the front entrance." The warrant similarly gave the precise location of the apartment on the thirteenth floor to be searched.

Pursuant to this warrant, Officer Seoane led a police team that executed a search of apartment 1310 at 80 West Dedham Street, Boston, where they found and seized the sought firearms, along with drugs, drug paraphernalia, and three individuals, including the instant defendants.

*Discussion.* 1. *Probable cause.* The defendants' contention that the facts in Officer Seoane's affidavit were insufficient to establish probable cause to issue the warrant under the standards set forth in *Commonwealth* v. *Upton*, 394 Mass. 363, 373-376 (1985), need not detain us. We agree with the Commonwealth's argument that the information supplied by Jibaro — who was not an anonymous informant but rather one whom police could and did contact, whose basis of knowledge was established by his firsthand observations inside Fernando's apartment, and whose veracity was reflected in his detailed description of the

---

[6]The detailed description of the appearance and composition of the building that is contained in the application, including the number on top of the front entrance, had been set forth in the affidavit but not explicitly attributed to information provided by Jibaro. Such an attribution is a reasonable inference, since the record does not reveal that Officer Seoane had any prior familiarity with the building or that it had been the object of prior surveillance.

contraband, of Fernando's plans for it, and of the precise location of Fernando's apartment — was amply sufficient to support probable cause to search under the tests of *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964), and *Spinelli* v. *United States*, 393 U.S. 410, 415-416 (1969).[7] That information was, in any event, rendered even more abundantly sufficient by the independent corroborative efforts of Officer Seoane.[8] The Commonwealth has adequately distinguished the numerous cases on which the defendant misplaced his reliance regarding this issue.

2. *Sufficiency of the warrant.* Both the Federal Constitution[9]

---

[7]That Jibaro was not an anonymous informant, but rather an informant who was known to and could be contacted by the police (and penalized for false reporting), and whose detailed information suggested that he was an eyewitness to the planning of the intended crime, if not a participant, were significant factors in assessing his reliability. See *Commonwealth* v. *Atchue*, 393 Mass. 343, 347-348 (1984), and cases cited. See also *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102-104 & n.8 (1997); *Commonwealth* v. *Alfonso A.*, 438 Mass. 372, 375-377 (2003); *Commonwealth* v. *Love*, 56 Mass. App. Ct. 229, 234 & n.5 (2002).

[8]In particular, Officer Seoane's ascertainment that Fernando Toledo of 80 West Dedham Street had been issued a firearms identification card that had expired (indicating both a past association with firearms and a present lack of lawful right to possess any firearms) not only helped confirm Jibaro's story of Fernando's illicit and secretive firearms dealing, but also was information not available to the public, much less to a casual bystander. See G. L. c. 66, § 10. In the final analysis, we have been admonished "that our attitude [with respect to reviewing the adequacy of an affidavit] is not and should not be a grudging or negative one and that we should give great deference to the magistrate's determination of probable cause," *Commonwealth* v. *Upton*, 394 Mass. 363, 377 (1985); that we indulge a certain amount of "leeway or leniency in the after-the-fact review of the sufficiency of applications for warrants," *Commonwealth* v. *Corradino*, 368 Mass. 411, 416 (1975); that affidavits "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion," *Commonwealth* v. *Atchue*, *supra* at 346, quoting from *United States* v. *Ventresca*, 380 U.S. 102, 108 (1965); that the magistrate may appropriately rely on the "inferences which reasonably could be drawn from the [affidavit] information," *Commonwealth* v. *Stewart*, 358 Mass. 747, 752 (1971); and that "[t]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Commonwealth* v. *Atchue*, *supra*, quoting from *United States* v. *Ventresca*, *supra* at 109.

[9]The Fourth Amendment to the United States Constitution requires that a search warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." Article 14 of the Massachusetts Declaration of Rights is not quite as precise as to place, requiring that the warrant "be . . . accompanied with a special designation of the persons or objects of search,

and our statutes[10] require "particularity" in a warrant's identification of the place to be searched as well as the things to be seized. See *Commonwealth* v. *Pope,* 354 Mass. 625, 628-629 (1968). The precise degree of required particularity cannot be definitively stated as a generally applicable principle since it depends on the circumstances of each case (although a total failure to describe the place to be searched is manifestly inadequate, see *Commonwealth* v. *Douglas,* 399 Mass. 141, 144 [1987] [describing the place as "premises to be identified by (executing officer) prior to execution of the warrant" does not pass constitutional muster]). While "elegant precision," *Commonwealth* v. *Hall,* 366 Mass. 790, 799 (1975), or "[a] conveyancer's precision of language," *Commonwealth* v. *Pellier,* 362 Mass. 621, 625 (1972), is not required on the face of the warrant or in the supporting affidavit, and "the description given . . . [need not be] technically accurate in every detail," *Commonwealth* v. *Cohen,* 6 Mass. App. Ct. 653, 655 (1978), neither are those documents to be read "with[] poetic license," *Commonwealth* v. *Hall, supra* at 799. The particularity of the description must be sufficient "to enable the executing officer to locate and identify the premises [to be searched] with reasonable effort . . . [so that there is no] reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the search warrant." *Commonwealth* v. *Treadwell,* 402 Mass. 355, 359 (1988), quoting from *Commonwealth* v. *Rugaber,* 369 Mass. 765, 768 (1976).

In this case, the defect in the warrant relied on by the defendants is not so much lack of particularity as ambiguity in identification of the locus to be searched, which the defendants maintain led to "[f]actual inaccuracies . . . going to the integrity" of the warrant and the affidavit. Cf. *Commonwealth* v. *Murray,* 359 Mass. 541, 548 (1971). The defendants argue that the search was invalid because the warrant, by its specific terms, commanded the search of 80 West Newton Street, not 80 West Dedham Street, so the police did not search the address

---

arrest, or seizure."

[10]General Laws c. 276, § 2, inserted by St. 1964, c. 557, § 2, requires that "[s]earch warrants shall designate and describe the building, house, place, vessel or vehicle to be searched and shall particularly describe the property or articles to be searched for."

stated in the warrant but rather another location altogether. Moreover, the defendants contend that the warrant should never have issued in the first place because of the unresolved ambiguities in the supporting affidavit. That affidavit — while expressly stating that it sought a warrant to search 80 West Dedham Street and setting forth several corroborating police efforts that established 80 West Dedham Street as Fernando's address and identified Fernando as the "Fernando" implicated in illicit gun traffic by Jibaro — nonetheless reported the informant as initially telling Officer Seoane that "Fernando resides in Villa Victoria[11] at 80 West Newton Street apartment #1310" (although the affidavit subsequently had Jibaro confirming that Fernando was the "Fernando" who was "the resident of 80 West Dedham St. apartment #1310," where the illegal guns were being kept).

Thus, the defendants assert, even had the single reference in the warrant to "80 West Dedham" (as appearing over the front entrance of the building), in the midst of four explicit references to search "80 West Newton St.," led the police to attempt to resolve the ambiguity by reference to the affidavit, they would have been similarly faced with two conflicting sets of addresses,[12] with the result that there was a "reasonable probability that another premises [(80 West Newton Street)] might

---

[11]We view as unjustified the reliance of the motion judge and the Commonwealth on the purported fact that the informant's description of Fernando's residence as the "Villa Victoria" sufficiently identified the place to be searched, on the supposition that the issuing clerk-magistrate and the executing police officers must have been familiar with that "large, well-known housing complex in the South End," whose address was in fact 80 West Dedham Street. There having been no evidentiary hearing, and no affidavits having been submitted on the issue, there was no record support for those assumptions; and no argument was presented to the motion judge or here as to the applicability of the doctrine of judicial notice on such an issue. Compare *Commonwealth* v. *Taglieri,* 378 Mass. 196, 198 (1979) (peculiar experience and knowledge of a clerk-magistrate may not support issuance of warrant). As far as the instant record is concerned, Officer Seoane and the issuing clerk-magistrate had no prior knowledge of, or familiarity with, the Villa Victoria or with whatever buildings were situated at 80 West Dedham Street and 80 West Newton Street.

[12]The Commonwealth argues that "fourteen [actually only nine] of the fifteen [actually only ten] mentions of the address in the affidavit were to '80 West Dedham Street,' " so that the police could not have been confused. That speculative and unsupported argument ignores the ambiguity in the affidavit

be mistakenly searched which [was] not the one intended to be searched under the warrant." *Commonwealth* v. *Treadwell, supra* at 359, quoting from *United States* v. *Sklaroff,* 323 F. Supp. 296, 321 (S.D. Fla. 1971). Contrast *Commonwealth* v. *Pope,* 354 Mass. at 629 (vagueness in warrant description cured by detailed and unequivocal description in warrant application). The defendants strenuously contend that the ambiguities created a fundamental evil, which the warrant requirement was intended to prevent, by giving the police discretion to search apartment 1310 in either building even though probable cause existed to search only one of those apartments, and constituted the very defect that led to suppression in *Commonwealth* v. *Treadwell, supra* at 361.[13]

The Commonwealth's responses to the defendants' arguments are less than compelling. They rely on supposed facts not appearing in the record — that the conflicting addresses were "inadvertent . . . clerical errors," the result of "hurried typing" because of the likely imminence of a sale of the guns by Fernando,[14] and "that the [executing] officers undoubtedly knew" where the "well-known" Villa Victoria was — and on conclusory conjecture as to how the executing officers would have resolved the ambiguities so that they would necessarily arrive at the correct location for which probable cause to search existed. Moreover, the authority that the Commonwealth claims is "directly on point," *Commonwealth* v. *Rugaber,* 369 Mass. at 767-769, is distinguishable in almost every respect, and none of

arising out of the informant (the sole source of information about the guns) initially telling Officer Seoane "that Fernando resides . . . at 80 West Newton St." Furthermore, although the police are required to have a copy of the warrant when executing it, *Commonwealth* v. *Guaba,* 417 Mass. 746, 754 (1994), they do not have to have the affidavit, which, in fact, G. L. c. 276, § 2B, requires the clerk-magistrate to retain.

[13]Since no evidentiary hearing took place, the record is devoid of proof as to what the buildings at the two addresses actually looked like, or proof that Officer Seoane, or any other officer participating in the execution of the warrant, had any prior knowledge of or familiarity with either building.

[14]While relying heavily on *Commonwealth* v. *Rugaber,* 369 Mass. at 767-769, as support for its position, the Commonwealth overlooks *Rugaber's* admonition that "[i]nvocations of error and inadvertence cannot ordinarily save an invalid warrant." *Id.* at 767.

the factors that saved the warrant in that case was present here.[15]

Nonetheless, the Commonwealth's reference to *Rugaber* is of helpful significance and, in our view, points the way to a proper resolution of this appeal, which concededly presents a close case. In mentioning, almost in passing, that the officers executing the warrant here "knew which residence to search," the Commonwealth alludes to the observation in *Rugaber, supra* at 769, that "[t]here is authority for piecing out an inadequate [warrant] description with the personal knowledge of the searching officers," authority on which the court in *Rugaber* stated it did not need to rely in the circumstances there presented.

A number of our cases stand for the principle that the executing officer's personal familiarity with the target locus of the search can make up for a deficiency or an ambiguity in the description of the premises in the warrant. See *Commonwealth* v. *Demogenes*, 14 Mass. App. Ct. 577, 581-582 (1982); *Commonwealth* v. *Petrone*, 17 Mass. App. Ct. 914, 915 (1983); *Commonwealth* v. *Gonzalez*, 39 Mass. App. Ct. 472, 475-477 (1995); *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. 502, 507-508 (1998); *Commonwealth* v. *Rodriguez*, 49 Mass. App. Ct. 664, 669-671 (2000); *Commonwealth* v. *Rise*, 50 Mass. App. Ct. 836, 840 (2001).

Although in all of those cases the executing officer's knowledge came from familiarity gained through prior physical

---

[15]In *Rugaber*, although the court stated that the warrant description "was not inadequate on its face," it went on to say that "even if the warrant was defective, the exclusionary rule should not be applied," since applying the exclusionary rule in these circumstances "would have no deterrent effect." *Id.* at 769. The warrant in that case included the correct street address of the house to be searched and an inaccurate description of the color and type of the building material of that house. *Id.* at 767. However, the description exactly matched the house next door. *Ibid.* It was because the correct street address was used that the Supreme Judicial Court concluded that the description "was not inadequate on its face." *Id.* at 769. In addition, because the search occurred at night, "the discrepancy was not apparent." *Id.* at 767. Further, the surveillance officers previously on the scene advised the executing officers, eliminating any danger that the wrong house would be searched. *Id.* at 769. Finally, the court found that the executing officers "were not aware of the misdescription when they executed [the warrant] and they were not reckless." *Id.* at 767. None of the four *Rugaber* factors is present in the instant case.

surveillance of the target premises, no decision has ever restricted the knowledge of an officer which can compensate for warrant shortcomings to that gained from prior surveillance. Any reliable source of knowledge that affords the executing officer a reasonable basis on which warrant ambiguities can be reconciled in a manner that insures the search of only the premises for which probable cause to search exists should suffice.

Thus, in *Commonwealth* v. *Todisco*, 363 Mass. 445, 446-450 (1973), a warrant that authorized a search for illegal gambling operations in "the rooms of apartment number (3) of the three (3) story red brick building with white trim situated at and numbered 83 Pleasant Street in the town of Marlborough, Mass.," was upheld, despite the fact that each of the three floors in the building had an apartment numbered three, because (a) the officer who filed the affidavit supporting the warrant had recited in that affidavit that he had been told by a confidential informant that the phone number of the room being used for the gambling was 481-1417 and was listed to Morris Ferrante; (b) the same officer-affiant was also one of the officers who executed the warrant; and (c) when executing the warrant, the officers discovered a mailbox in the vestibule of the building bearing the name "Ferrante, 2/3." Reading the warrant and affidavit together, the officers, based on the knowledge they had obtained, could identify the very one of the three apartments that the warrant authorized to be searched. *Id.* at 449-450. Contrast *Commonwealth* v. *Treadwell*, 402 Mass. at 359-360, where "[t]he record . . . fail[ed] to reveal that the police had knowledge of facts sufficient to overcome the ambiguity in the warrant."[16]

So, too, in this case, Officer Seoane's affidavit supporting the warrant described his several corroborative efforts to identify the gun dealer Jibaro called "Fernando," in the process of which he obtained reliable information that "Fernando's" home

---

[16]The ambiguity in *Treadwell, supra* at 357-358, resulted from the warrant authorizing search of "the front apartment on the 2nd floor above apartment #17 . . . having a yellow bumper sticker on it stating 'Make My Day,' " whereas the defendant's apartment, while bearing such a bumper sticker on its door, was not the apartment directly above apartment 17.

phone number, provided by Jíbaro, belonged to Fernando Toledo of 80 West Dedham Street. That specific address and occupant information was corroborated by Officer Seoane's several checks of postal, registry, firearms, and probation records, and ultimately confirmed by Jíbaro himself upon identifying Fernando's motor vehicle license photo as that of the "Fernando" who was "the resident of 80 West Dedham St. apartment #1310," at which location Jíbaro had observed Fernando in possession of the illegal firearms. On the basis of that cumulative confirmatory information, Officer Seoane's affidavit expressly requested a search warrant "for 80 West Dedham St. Apartment #1310."

Thus, the same officer who here swore out the affidavit and executed the warrant had acquired such trustworthy knowledge as to the residence and name of the suspected gun dealer, memorialized in his affidavit, that there was no reasonable possibility, much less probability, that he would mistakenly search 80 West Newton Street, or any premises other than 80 West Dedham Street, the one address for which he was aware probable cause to search had been established, notwithstanding the address mistakenly mentioned in the warrant. In this connection, it is useful to compare *Commonwealth* v. *Walsh*, 409 Mass. 642, 643 (1991), where the warrant identified the building to be searched in great and explicit detail, as well as the name of the occupant, but failed either to provide a street address or even to indicate the town in which the building sat. Prior to its execution, however, the officer who filed the supporting affidavit (which contained the missing information but was not attached to the warrant) orally gave such information to his colleagues who were about to execute the warrant (the affiant not being among them), *ibid.*, so that "there was no reasonable probability that a place other than the one intended to be searched . . . might be mistakenly searched." *Id.* at 645.

Armed with the substantiating information he had carefully gathered, Officer Seoane would have had little difficulty leading the executing party to the precise address and apartment that had emerged as the premises for which probable cause to search existed, even without any prior personal familiarity with the structure at that address. Cf. *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 69 n.9 (1977) (geographic facts such as

street locations and addresses are matters capable of accurate and ready determination). Moreover, such an outcome was particularly likely here given the specificity of the description of the building and its unique front entrance in the affidavit and warrant.

How Officer Seoane's corroboratively accumulated knowledge that 80 West Dedham Street was the correct search locus became carelessly transmuted on the warrant application he prepared (and then onto the warrant itself[17]) cannot be ascertained from this record, in the regrettable absence of any evidentiary hearing on the motions to suppress — a circumstance difficult to comprehend, at least from the Commonwealth's perspective, in light of the address ambiguities in the critical documents that were highlighted by the motions.

What we can say with confidence, however, is that, given Officer Seoane's unique role at every step of the process and the common sense we attribute to police officers in the exercise of their duty when executing warrants, see *Commonwealth* v. *Cohen*, 6 Mass. App. Ct. at 655, "[t]here was little likelihood that the wrong [place] would be searched. We are not here concerned with what might have happened had the warrant been executed by an officer with no familiarity with [or reliable information about] the premises." *Commonwealth* v. *Demogenes*, 14 Mass. App. Ct. at 581. Even "if [the warrant was] so ambiguous as to be defective, we would see no prophylactic value in the application of the exclusionary rule in the circumstances of this case. The officers did nothing unreasonable which we would seek to

---

[17]As previously noted, the warrant was essentially a carbon copy of the application. "It seems reasonable to infer, although there was no testimony on the point, that the search warrant was not prepared by the [clerk-magistrate] who issued it, but rather by the [officer] who then presented it to the clerk," *Commonwealth* v. *Rutkowski*, 406 Mass. 673, 674-675 (1990), which may well have created the undesirable situation that "[t]here was no detailed involvement of a judge [or clerk-magistrate] in the crafting of the warrant nor any explicit assurance from a judge (or [clerk-magistrate]) that the search warrant was in proper form." *Id.* at 677. In this connection, we are puzzled how the issuing clerk-magistrate, whose obligations were to review the supporting affidavit to determine from its four corners whether probable cause existed to support the warrant and whether the warrant designated with particularity the premises to be searched, could have failed to have noticed the address discrepancies. Cf. *Commonwealth* v. *Forish*, 61 Mass. App. Ct. 554, 557-558 & n.8 (2004).

deter from happening in the future." *Id.* 582-583 (citations omitted).[18]

Accordingly, the orders denying the motions to suppress are affirmed.

*So ordered.*

---

[18]Although we conclude that, in the entirety of the circumstances, the place intended to be searched was sufficiently identifiable as to allow the officers to locate and pinpoint the premises with reasonable effort and with minimal risk that any other place for which probable cause to search had not been established would be approached (much less searched), we are constrained to express our concern regarding (and our hope for future avoidance of) several troubling aspects of this case: the apparent carelessness with which the critical facts mustered in the affidavit were transferred to the warrant application; the seeming lack of careful review of the affidavit by the clerk-magistrate who issued the warrant; and the Commonwealth's torpid response to the defendants' motions to suppress, a response that failed to develop the facts that could easily have clarified, if not resolved, the ambiguities and conflicts seized on by the defendants, or at least could have revealed the exigent circumstances or time pressures that explained how those conflicts and ambiguities came about. Although one might logically infer, from the informant's warning that Fernando intended to sell the guns imminently, that the officers acted with such haste to prevent such an event that mistakes were made, the record does not support the conclusion that they lacked the time needed to prepare the document accurately.