COMMONWEALTH vs. CARLOS VALERIO.

Middlesex. May 8, 2007. - July 20, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Controlled Substances. Practice, Criminal,* Warrant, Affidavit. *Search and Seizure,* Warrant, Affidavit. *Constitutional Law,* Search and seizure.

Discussion of the statutory and constitutional requirements that a search warrant describe with particularity the place to be searched and the persons or things to be seized. [566-572]

Where a search warrant failed, on its face, to meet the demands of particularity required by G. L. c. 276, § 2, art. 14 of the Massachusetts Declaration of Rights, and the Fourth Amendment to the United States Constitution, but incorporated by reference a sufficiently detailed eight-page affidavit, which was attached to the warrant at the time it was issued, the resulting search was not an unlawful general search [572], and in the absence of a request by the defendant, the officers' failure to allow the defendant the opportunity to examine the entire affidavit at the commencement of the search was no reason to exclude the evidence seized [572-573]; further, the search was executed within the scope permitted by the warrant and was not unreasonable for constitutional purposes [573-574].

INDICTMENT found and returned in the Superior Court Department on November 20, 2003.

Questions of law were reported by *Paul A. Chernoff,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Vincent F. Ricciardi* for the defendant.

*Joseph Gentile, Jr.,* Assistant District Attorney, for the Commonwealth.

*Nona E. Walker,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

GREANEY, J. Officers of the Hudson police department seized cocaine, suspected drug packaging materials, various papers, and United States currency during a search of the defendant's apartment conducted on September 16, 2003. The warrant authori-

zing the search correctly described the place to be searched, but because of an error in the warrant application, the warrant did not describe the particular items intended to be seized (and that were in fact seized). After the defendant was indicted on charges of trafficking in cocaine, he filed a motion to suppress the fruits of the search. Without deciding the motion, a judge in the Superior Court reported two questions to the Appeals Court, pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979). We transferred the case here on our own motion.

The reported questions, which we phrase slightly differently than did the judge, ask whether the evidence seized during the search must be suppressed (1) because the lack of particularity in the search warrant rendered it fatally defective; or (2) because the defendant, who was present and had been arrested at the commencement of the search, was shown a copy of the warrant but was not shown attachments to the warrant which described the items for which the search was authorized. We conclude that the evidence should not be suppressed. Our conclusion follows from established principles concerning a search warrant's requisite particularity, as set forth in the Fourth Amendment to the United States Constitution, art. 14 of the Massachusetts Declaration of Rights, and G. L. c. 276, § 2. These principles shall be discussed in part 2 of this opinion. Because our discussion resolves the basic issues presented by the defendant's motion to suppress, we need not answer directly the reported questions. See *Spellman* v. *Shawmut Woodworking & Supply, Inc.*, 445 Mass. 675, 679 (2006); *Commonwealth* v. *Markvart*, 437 Mass. 331, 333 (2002); *McStowe* v. *Bornstein*, 377 Mass. 804, 805 n.2 (1979).

1. The following facts are drawn from the judge's recitation of undisputed relevant facts contained in the report to the Appeals Court. On September 15, 2003, Detective Scott M. Chaulk of the Hudson police department sought and obtained a search warrant in the Marlborough Division of the District Court Department for a search of the defendant's apartment at 165 Main Street. In the portion of the standard search warrant application calling for a description of the property to be seized, Detective Chaulk erroneously entered a description of the place to be searched. This error was transcribed onto the face of the

search warrant itself (as the form is formatted to do) by means of a carbon backing. The warrant was issued, without correction, by an assistant clerk-magistrate, who stamped each page of the nearly eight-page affidavit, as well as each page of the extensive supporting documentation that accompanied the affidavit.[1] Within the supporting affidavit, Detective Chaulk requested permission to search for cocaine, drug paraphernalia, money, and documents relating to the sale and trafficking of narcotics.[2] The warrant incorporated by reference the information contained in the affidavit.[3] The warrant specifically authorized the search to be conducted at nighttime and commanded the search team to search any person present who might have, in his or her possession, any of the designated items to be seized. The warrant also authorized the search team to enter the defendant's apartment without announcing their presence. At the time of submission and issuance in the District Court, the affidavit and supporting documents were attached by paperclip to the application and search warrant.

On September 16, 2003, police officers, led by Detective Chaulk, executed the search warrant. Prior to the warrant's execution, Detective Chaulk conducted an operational plan briefing for officers participating in the search. He outlined the building's exits and floor plan and explained exactly what the

---

[1]The extensive supporting documentation accompanying the affidavit consists, basically, of police reports and records on, or about, past criminal conduct of the defendant and several of his associates. We have not considered these documents, and the nature of the information contained within makes no difference to this opinion.

[2]The affidavit requested permission to seize "[c]ocaine [and] items used to transport, manufacture, compound, convert, produce, prepare, test, package, store, contain, conceal, ingest, inject, inhale[,] including items used to record[,] including papers, books, documents, monies and paraphernalia related to the illegal sale, distribution and use of cocaine . . . ."

[3]The warrant application submitted by Detective Chaulk stated: "I have the following information based upon the attached affidavit(s), consisting of a total of [eight] pages and addendum, which [are] incorporated herein by reference." The search warrant itself, authorized by the assistant clerk- magistrate, contained the following language: "Proof by affidavit, which is hereby incorporated by reference, has been made this day and I find that there is probable cause to believe that the property described below . . . is intended for use or has been used as the means of committing a crime[;] has been concealed to prevent a crime from being discovered[;] is unlawfully possessed or concealed for an unlawful purpose[; and] is evidence of a crime or is evidence of criminal activity."

search team was looking for, as specified in the affidavit. In preparation for the search, Detective Chaulk had prepared a plastic Rubbermaid container, in which he had placed a tote bag containing a copy of the warrant to which the affidavit, and its supporting documents, remained attached by paperclip. The Rubbermaid container also held evidence containers, gloves, a Polaroid camera, and a copy of the operational plan for the search.

While sitting in an unmarked police vehicle in the parking lot of 165 Main Street, police officers observed the defendant and his brother, Juan Valerio, exiting a vehicle in the parking lot. The two men separated. The defendant entered the main door of his apartment house, and Juan walked in the direction of his residence, a short distance away, at 10 Summer Street.[4] Juan appeared to notice the police officers and began placing a call on his cellular telephone. Fearing that Juan was attempting to warn the defendant of their presence, the police quickly entered the back entrance of 165 Main Street. They encountered the defendant in the common hallway outside his apartment and, with weapons drawn, ordered him to the floor and searched him. Using a battering ram, the police forcibly entered the defendant's apartment and secured the scene.

The defendant was instructed to sit in a chair in the kitchen. He was handcuffed and given Miranda warnings. Detective Chaulk informed the defendant that the police were there to execute a search for drugs and asked the defendant whether there were any drugs in the apartment. The defendant responded affirmatively and nodded in the direction of the bedroom. Before the search commenced, an officer retrieved the Rubbermaid container from the police vehicle and carried it into the apartment. Detective Chaulk held up a copy of the one-page document that was the search warrant for the defendant to see. The affidavit and other supporting documents were not attached to the copy of the warrant that was shown to the defendant. There is no evidence that the defendant requested a closer look at the warrant, or that he requested an opportunity to review the affidavit or any of the supporting documents.

---

[4]Hudson police officers had obtained an additional warrant to search the residence of Juan Valerio that day as well. The two searches were to be executed simultaneously by two separate search teams.

2. The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article 14 of the Massachusetts Declaration of Rights requires all warrants be "previously supported by oath or affirmation" and "accompanied with a special designation of the persons or objects of search, arrest, or seizure."[5] In addition, G. L. c. 276, § 2, requires that "[s]earch warrants shall designate and describe the building, house, place, vessel or vehicle to be searched and shall particularly describe the property or articles to be searched for." Our cases do not distinguish between the statutory requirement of particularity, as set forth in G. L. c. 276, § 2, and the requirements of particularity under the Constitutions of the Commonwealth and of the United States. See *Commonwealth* v. *Walsh*, 409 Mass. 642, 644-645 (1991); *Commonwealth* v. *Treadwell*, 402 Mass. 355, 359 n.6 (1988); *Commonwealth* v. *Sheppard*, 394 Mass. 381, 389 (1985).

We have stated that the dual purposes of the particularity

---

[5]    "It is well known that art. 14 was adopted to prohibit the abuse of official power brought about by two devices which the British Crown used in the colonies: the general warrants and the writs of assistance. The general warrants empowered their holder to seize and burn books or other printed matter deemed 'offensive to the state.' The writs of assistance were a special kind of general warrant which permitted their bearer, usually a customs official, to search with unlimited discretion for smuggled goods without special application to a court. See 2 Legal Papers of John Adams 108 (L. Wroth & H. Zobel eds. 1965)."

*Jenkins* v. *Chief Justice of the Dist. Court Dep't*, 416 Mass. 221, 229 (1993) (citations omitted).

In *Commonwealth* v. *Gauthier*, 425 Mass. 37, 42 (1997), this court described the particularity requirement of art. 14 as follows:

> "No official is to be armed with unfettered authority to enter on private property, search there, and seize what he pleases. By including the designation of the places to be searched and the items to be seized in the warrant, there is particular assurance that the magistrate has not granted such a general power. It is a recognition of the right of the citizen to be free of such official intrusion except by specific judicial authorization that these specifications must be set out in the warrant itself. That is what the warrant does: it warrants the search of a particular place and the seizure of particular items, and the subject of the search is informed by it that the search is proceeding according to such authorization."

requirements of G. L. c. 276, § 2, and art. 14 are (1) to protect individuals from general searches and (2) to provide the Commonwealth the opportunity to demonstrate, to a reviewing court, that the scope of the officers' authority to search was properly limited. See *Commonwealth* v. *Sheppard, supra*; *Commonwealth* v. *Pope*, 354 Mass. 625, 629 (1968); *Commonwealth* v. *Monosson*, 351 Mass. 327, 330 (1966). In *Commonwealth* v. *Sheppard, supra*, we also suggested that a warrant's requisite particularity under art. 14 serves to "provide the defendant with the opportunity at trial to demonstrate that the officers' authority to search was impermissibly broad." *Id.* at 391. A related purpose of the particularity requirement of the Fourth Amendment, stated by the United States Supreme Court in *Katz* v. *United States*, 389 U.S. 347, 356 (1967), and more recently repeated in *Groh* v. *Ramirez*, 540 U.S. 551, 559-561 (2004), is to provide necessary information to an individual whose property is being searched or seized. See *Commonwealth* v. *Balicki*, 436 Mass. 1, 7 (2002) ("particularity requirement [of art. 14] serves as a safeguard against general exploratory rummaging by the police through a person's belongings"); *Commonwealth* v. *Guaba*, 417 Mass. 746, 753-755 (1994) (art. 14's implicit requirement that warrant be present at search scene serves to guide police to permissible scope of search and to put occupant of premises on notice of authority to search and reasons for search).

We emphasize that every effort should be made to draft applications for search warrants, and for warrants to issue, in accordance with constitutional and statutory requirements. Some measure of "leeway or leniency in the after-the-fact review" of the sufficiency of an application for a warrant that has been properly authorized by a magistrate, however, is necessary as a practical matter. *Commonwealth* v. *Corradino*, 368 Mass. 411, 416 (1975). Even though a search has been conducted pursuant to a warrant that is technically defective, suppression of the evidence does not automatically follow. See *Commonwealth* v. *Rutkowski*, 406 Mass. 673, 676 n.5 (1990); *Commonwealth* v. *Sheppard, supra* at 389. There are times when a warrant, insufficient on its face, incorporates by reference an extrinsic document (usually an affidavit) that is physically attached to the

warrant and present when the search is executed. In such circumstances, we have held that the affidavit cures the particularity deficiency in the warrant and, essentially, validates the warrant. See *id.* at 390-391; *Commonwealth* v. *Todisco,* 363 Mass. 445, 450 (1973). See also *Commonwealth* v. *Guaba, supra* (documents describing items to be seized must be present at the search in order to meet particularity requirements).

By way of comparison, in circumstances when a copy of the affidavit describing the items for which the search is authorized is neither affixed to the warrant nor shown to the defendant, the Commonwealth has the burden "of coming forward with proof that the descriptive documents were present to guide the search, and available to inform the defendant of the limits of the search." *Commonwealth* v. *Rutkowski, supra* at 675. In the absence of such a demonstration by the Commonwealth, the search is considered an unlawful general search, and the evidence must be suppressed under the principles, discussed above, underlying art. 14 and G. L. c. 276, § 2. See *id.* at 677. The relevant inquiry in determining whether exclusion is warranted under art. 14 and G. L. c. 276, § 2, is whether the affidavit is incorporated by, and attached to, the warrant (thus becoming an integral part of the warrant) and whether the affidavit is present during the execution of the search. See *id.* at 675. In the circumstances just described, the purposes of the particularity requirements are met, no prejudice has resulted to the defendant, and there is no police misconduct to deter. In these cases, we have characterized the deficiency in the warrant's particularity as a technical, rather than substantive, violation that does not require exclusion under art. 14 or G. L. c. 276, § 2. See *Commonwealth* v. *Sheppard, supra* at 390. Cf. *Commonwealth* v. *Mullane,* 445 Mass. 702, 707-708 (2006) (warrant sufficient when addendum described with particularity target of search); *Commonwealth* v. *Pellegrini,* 405 Mass. 86, 90-91, cert. denied, 493 U.S. 975 (1989) (as general rule, warrants must be signed by authorizing authority but, when unsigned through inadvertence, still may be deemed valid).

In *United States* v. *Leon,* 468 U.S. 897 (1984), the Supreme Court of the United States rejected the notion that "the exclusionary rule is a necessary corollary of the Fourth Amendment." *Id.* at 905-906. The Court cautioned that rigid adherence to the

exclusionary rule, especially when police officers act in "good faith" or when their transgressions are minor, "offends basic concepts of the criminal justice system." *Id.* at 907-908. The Court reasoned, essentially, that no deterrence occurs when police officers reasonably rely on a warrant obtained from a judge or a magistrate that is later found to be deficient. See *id.* at 916-920. The Court ultimately concluded that the exclusionary rule should be applied as a remedy for unreasonable searches and seizures, on a case-by-case basis, only when the rule's application would further the purpose of deterring police misconduct. See *id.* at 920-921. The Court made clear that good faith may not be attributed to officers who behave improperly when executing a warrant or where there are no "reasonable grounds for believing that the warrant was properly issued." *Id.* at 923. The Commonwealth does not rely on the *Leon* decision. Massachusetts has never adopted the "good faith" exception, and we do not adopt it now. We refer to the decision, nonetheless, for the general principles set forth immediately above, which have been well-established as part of our jurisprudence governing search and seizure, and to provide the background for the cases next described.

In *Commonwealth* v. *Sheppard*, 387 Mass. 488 (1982), a police detective sought a warrant for specific evidence of a homicide. He prepared an affidavit, but was able to find only a warrant form for controlled substances. Even though the warrant, when completed, referred to controlled substances, the issuing judge assured the detective that the form had been properly altered (by means of crossed-out, and inserted, language) to conform to the affidavit. Our court concluded that the warrant was invalid and that exclusion of the evidence seized was required under the Fourth Amendment, regardless of whether the officers believed that they were acting lawfully. See *id.* at 507-508 & n.20. The United States Supreme Court, after granting a petition for a writ of certiorari, 463 U.S. 1205 (1983), concluded otherwise. See *Massachusetts* v. *Sheppard*, 468 U.S. 981 (1984). Deciding the *Sheppard* case in the wake of the *Leon* decision, the Supreme Court determined that the officers executing the search "reasonably believed that the search they conducted was authorized by a valid warrant." *Massachusetts* v.

*Sheppard, supra* at 987-988. The Court reiterated what had been suggested in *Leon*, that exclusion is not required under the Fourth Amendment when "the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid." *Massachusetts* v. *Sheppard, supra* at 987-988.

On remand to this court, in *Commonwealth* v. *Sheppard*, 394 Mass. 381 (1985), we held the evidence seized to be admissible under art. 14 and G. L. c. 276, § 2. As has been indicated above, our second *Sheppard* decision stands unequivocally for the proposition that, despite a warrant's technical violation for lack of particularity, when the items intended to be seized are listed in an attached affidavit, and the affidavit is incorporated into the warrant and present at the scene of the search, exclusion of evidence does not necessarily follow. See *id.* at 390-391. As long as the officers have not exploited the deficiency and have conducted the search as if the warrant had complied with constitutional and statutory requirements, there is no prejudice to the defendant, and therefore, neither art. 14 nor G. L. c. 276, § 2, requires that the evidence be excluded. See *id.* at 391 & n.8.

In a third case concerning a search warrant lacking the particularity required by the Fourth Amendment, *Groh* v. *Ramirez*, 540 U.S. 551 (2004), the United States Supreme Court clarified, to some degree, its *Leon* and *Sheppard* decisions. The *Groh* case, a so-called *Bivens* action (see *Bivens* v. *Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 [1971]), was a suit for damages against an agent of the Bureau of Alcohol, Tobacco and Firearms, after a fruitless execution of a search warrant. The warrant later was determined to be defective (due to an error on the part of the agent, who applied for, and filled out, the warrant) regarding particularization of the items to be seized. The warrant in *Groh* not only failed to identify any of the objects of the search, but also failed to incorporate, by reference, the itemized list of objects set forth in the warrant application and in the supporting affidavit. The latter documents were neither attached to the warrant nor available during the execution of the search. Considering whether the defendant agent was entitled to

qualified immunity, the Court observed that "even a cursory reading of the warrant . . . would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal." *Id.* at 564. The Court emphasized that " '[t]he presence of a search warrant serves a high function,' *McDonald* v. *United States,* 335 U.S. 451, 455 (1948), and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search." *Groh* v. *Ramirez, supra* at 557. The *Groh* Court noted, however, that it would be permissible, under the Fourth Amendment, for a warrant to cross-reference other documents, "if the warrant uses appropriate words of incorporation, *and* if the supporting document accompanies the warrant" (emphasis supplied). *Id.* at 557-558.[6]

The Fourth Amendment does not require that an individual be given a copy of the warrant before the commencement of a search of his or her property. See *United States* v. *Grubbs,* 547 U.S. 90, 98-99 (2006), citing *Groh* v. *Ramirez, supra* at 562 n.5. Although it is established that art. 14 does require police officers to have a copy of a search warrant with them at the time they conduct a search, see *Commonwealth* v. *Guaba,* 417 Mass. 746, 754 (1994), we have never required that the entire warrant be shown, read to, or understood by an individual who may be present and whose property is about to be searched. See *Commonwealth* v. *Mullane,* 445 Mass. 702, 707 (2006) (police entered lobby of building, quickly displayed warrant through glass sliding window, and used battering ram to enter internal door; this court held that "the officers' actions were proper"). As we observed in *Commonwealth* v. *Gauthier,* 425 Mass. 37 (1997), "[t]he warrant procedure does not contemplate that the

---

[6]The Appeals Court confronted a similar particularity defect in a warrant in *Commonwealth* v. *Forish,* 61 Mass. App. Ct. 554 (2005), after the Supreme Court granted the defendant's petition for writ of certiorari and, without decision, remanded the case for reconsideration in light of what was said in *Groh* v. *Ramirez,* 540 U.S. 551 (2004). See *Forish* v. *Massachusetts,* 540 U.S. 1216 (2004). Although there were general words of incorporation in the warrant in the *Forish* case, the Appeals Court held (correctly, in our view, under both the Fourth Amendment and art. 14) that the defendant's motion to suppress should have been allowed because the affidavit, though referenced in the warrant, was not attached to the warrant and was not present at the scene of the search. See *Commonwealth* v. *Forish, supra* at 560-561.

person to whom the warrant is presented should be able to judge from that presentation at the time of execution its full legality and perhaps to decide on that basis whether or not to comply. Rather, it is intended to notify that person that the officers have been authorized to be in that particular place and to search for that particular thing." *Id.* at 43, citing *Matter of the Application of Lafayette Academy, Inc.,* 610 F.2d 1, 5 (1st Cir. 1979). These, then, are the principles which govern the following analysis.

3. There is no question that the search warrant in the instant case failed, on its face, to meet the demands of particularity required by G. L. c. 276, § 2, art. 14, and the Fourth Amendment. The eight-page affidavit, however, which was stamped on every page by the assistant clerk-magistrate, incorporated by reference into the warrant, and attached to the warrant at the time it was issued, was more than sufficiently detailed. The affidavit remained attached to the warrant as it was brought to the premises and was available during the execution of the search to inform the defendant of the limits of the search. We conclude that the warrant, while technically defective, met the substantive requirements of particularity under G. L. c. 276, § 2, art. 14, and the Fourth Amendment.[7] Despite the technical violation, the search of the apartment was not an unlawful general search. See *Commonwealth* v. *Sheppard,* 394 Mass. 381, 390-391 (1985).

We then ask whether the evidence must be excluded because the affidavit completing the warrant was not shown to the defendant at the commencement of the search. According to the judge's findings (which are not challenged in any respect), Detective Chaulk informed the defendant, before the search commenced, that the officers were looking for drugs, and he asked the defendant whether there were any drugs in the apartment. The defendant acknowledged his understanding of this information when he nodded toward the bedroom, thus assisting the officers

---

[7] In *Commonwealth* v. *Accaputo,* 380 Mass. 435 (1980), we considered the extent to which an administrative inspection warrant, obtained pursuant to G. L. c. 94C, § 30, must describe the purpose of the inspection and contain a description of the items to be inspected and seized. We stated: "[T]he power to seize is not a detail which can be incorporated by reference into a warrant." *Id.* at 445. The defendant's reliance on this language to support his argument that a search warrant obtained during a criminal investigation may not incorporate, by reference, an attached affidavit, is misplaced.

in locating at least one object of their search. The defendant asked no questions of the officers, and there is nothing in the judge's findings that would allow the inference that the defendant communicated any intention to protest, or challenge, the officers' authority to search. If he had, the supporting affidavit was present at the scene and available for his inspection. It is doubtful, on this record, that the defendant read, or attempted to read, any part of the warrant that was shown to him. It cannot be said, however, that information was purposefully withheld from the defendant, or that the defendant was kept unaware of the purpose of the search. We conclude that, in the absence of a request by the defendant, the officers' failure to allow the defendant the opportunity to examine the entire eight-page affidavit provides no basis to exclude the evidence.

The judge, in formulating the reported questions, was troubled by the manner in which the defendant initially was ordered to the floor of the hallway at gunpoint and, after the police broke down the apartment door with a battering ram, was handcuffed in the kitchen before the actual search began. Detective Chaulk and the search team had the right to proceed in accordance with the warrant's authorization, including taking reasonable means to secure the premises and to protect themselves. See *Commonwealth* v. *Blake*, 413 Mass. 823, 829 (1992). See also *Commonwealth* v. *Charros*, 443 Mass. 752, 763, cert. denied, 546 U.S. 870 (2005) (recognizing importance of need of police officers to "exercise unquestioned command" of search site). The warrant commanded the search team to search the defendant or any person present in the apartment who might have had drugs, or weapons, in his possession. The warrant also authorized the search team to enter the apartment without announcing their presence. Such "no knock" warrants are issued based on a finding of probable cause that announcing the presence of police officers in advance of execution of the warrant would jeopardize the officers' safety or result in the destruction of evidence. See *id.* at 764. Detailed information contained in the affidavit (which was known to Detective Chaulk and which we can infer was relayed to the entire search team, who had been thoroughly briefed by Detective Chaulk beforehand) indicates that the defendant had associ-

ates who might have been inside the apartment[8] and that Juan Valerio (whom the defendant had just left) was known to keep several different types of weapons, including a handgun, a sword, knives, and ice picks, near the door of his apartment as protection against "unwanted entry." Given warning, people inside the apartment could have attempted to destroy evidence of drugs, and moreover, they could have been armed and dangerous. In view of these circumstances, we will not second-guess decisions that were made by Detective Chaulk and the search team. See *Commonwealth* v. *Scalise*, 387 Mass. 413, 421-422 (1982); *Commonwealth* v. *Toledo*, 66 Mass. App. Ct. 688, 699 (2006) (court must attribute "common sense" to police officers in exercise of their duty when executing warrants). A reviewing court should leave the precise manner of carrying out a search to the searching officers' discretion, so long as their conduct does not exceed what is permitted by the Fourth Amendment's protection against unreasonable searches. See *Commonwealth* v. *Garner*, 423 Mass. 735, 740 (1996). In his motion to suppress (and in his brief to this court), the defendant did not raise the issue of excessive force or allege that the scope of the search was impermissibly broad. This failure, together with the lack of any evidence in the record that the police searched beyond what they were authorized to do, compel our conclusion that the search was executed within the scope permitted by the warrant and was not unreasonable for constitutional purposes.

In sum, the issues are governed essentially by what was said by the United States Supreme Court in its *Leon*, *Sheppard*, and *Groh* decisions, and by established Massachusetts case law, particularly *Commonwealth* v. *Sheppard*, *supra* (decided after remand), and the *Guaba* and *Gauthier* decisions cited above. An error, to be sure, occurred in the application for the warrant. The resulting error in the warrant itself was cured, however, by its incorporation by reference of, and physical attachment to, a sufficiently detailed affidavit. The police were meticulous in their preparation and organization prior to the execution of the search. The search, while perhaps not perfectly executed, was not unconstitutional. The officers did not exploit the mistake in

---

[8]One such associate, named in the affidavit as Genaro Mendoza, may have been the actual lessee of the apartment.

the warrant, and the search was conducted in precisely the same manner as it would have been conducted had the warrant not been technically defective. See *Commonwealth* v. *Sheppard, supra* at 390. There is no reason, therefore, to exclude the evidence seized during the search.

4. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*