Kane, Robert J., J.
INTRODUCTION
Before the court is the defendant’s motion to reconsider the denial of his motion to suppress historical cell site location information (“CSLI”) obtained by the Commonwealth pursuant to the Stored Communications Act, 18 U.S.C. §2703(d) (the “SCA”). The defendant argues that the recent Supreme Judicial Court case, Commonwealth v. Augustine, 467 Mass. 230 (2014), requires the Commonwealth to obtain a warrant based on a finding of probable cause in order to acquire the defendant’s CSLI records. For the reasons hereinafter stated, the defendant’s motion to reconsider is allowed, and after reconsideration, the denial of the motion to suppress stands.
BACKGROUND
The following information was provided in the Commonwealth’s affidavit in support of the §2703(d) order. The affidavit described the attempted robbery and fatal shooting, Corey Princiotta’s and Mark Goulart’s involvement in planning and carrying out the attempted robbery and killing, and their actions and appearances before and after the commission of the crimes. The defendant was subsequently charged with armed assault with intent to rob and first-degree murder arising out of the aborted robbery and fatal shooting at the Petro-Mart, located at 171 Coggeshall Street, New Bedford, Massachusetts.
The Robbery and Shooting
On June 20, 2009, the shooter entered the PetroMart at approximately 8:33 p.m. He was described as 5’ 10" to 6’ 2" tall, very skinny and weighing approximately 160 pounds. He appeared to be Hispanic and was speaking in street slang. He was wearing a gray hooded sweatshirt with the hood tied tightly over his head. After he purchased a beverage from the clerk, another customer, John Martin, entered the store. The shooter drew a black firearm from his waistband, pointed it at the store employee and demanded money while declaring that a robbery was occurring. At that time, Martin confronted the shooter and unsuccessfully attempted to grab the firearm. In response, the shooter fired and hit Martin in the right temple, killing him.
*336 Corey Princiotta and Mark Goulart
The New Bedford Police and the Massachusetts State Police investigated Martin’s death. Investigators concluded that the defendant and Goulart planned to rob the Petro-Mart to repay a drug debt. After consulting photo arrays, several witnesses identified Corey Princiotta, the defendant, as a friend of Mark Goulart. Goulart’s residence, twenty-three Bentley Street, is within a few city blocks of the Petro-Mart.
Conduct Before and After the Homicide
Witnesses described Goulart leaving his apartment with the defendant on the night of the robbeiy and shooting. The defendant wore a gray hooded sweatshirt with the hood tied tightly around his face. A witness also reported that Goulart owned a similar hooded sweatshirt, but Goulart had disposed of it around the time of the crimes. The two men were seen leaving the apartment building at the same time but they departed in different directions. After the robbeiy and shooting, the defendant and Goulart returned to Goulart’s apartment, but the defendant was no longer wearing the gray hooded sweatshirt. Approximately ten minutes after the aborted robbeiy and shooting, both men appeared to be scared and started to argue about the location of the gray sweatshirt. The defendant stated that he took the sweatshirt off, folded the gun inside of it and hid the items under a car on Sawyer Street.
Eyewitnesses corroborated the Sawyer Street location as consistent with the shooter’s path of travel after fleeing the Petro-Mart. They also told investigators that the defendant was concerned about leaving DNA evidence in the sweatshirt, and that Goulart planned to recover the sweatshirt.
Cell Phone Order
Upon arrest, the defendant gave police his cell phone number — (774) 444-4766. The defendant’s probation officer confirmed that the number given to police was the defendant’s number. Investigators reviewed the defendant’s and Goulart’s telephone records and discovered that the defendant had called Goulart’s number at least three times before the shooting and at least five times after the shooting. Investigators concluded that the defendant and Goulart used their phones while acting in concert to rob the PetroMart.
Massachusetts State Police Sergeant Michael King called the defendant and told him that the police wished to speak with him. The defendant agreed to be interviewed. The defendant and his girlfriend, Tony Yunis, met with the police. There, Yunis voluntarily gave the defendant’s cell phone to the police.
At the grand juiy’s request, the court (McIntyre J.), ordered the defendant’s cell phone provider to produce “cell tower location information, call detail information, call logs and text messages . . .” The police received records for a period starting on June 20, 2009 at 7:00 p.m. until June 21, 2009 at 11:59 p.m., a period of approximately twenty-nine hours.[1] This order, pursuant to §2703(d), relied on the previously described affidavit sworn to by assistant district attorney Aaron Strojny, the grand jury’s legal adviser. It can reasonably be inferred that the investigation of the historical CSLI focused on the location of the defendant and Goulart before, during and after the crimes, and the possible locations of where the gun and clothing worn by the defendant was hidden.
DISCUSSION
The court in Augustine found that the Commonwealth was required to obtain a warrant under a probable cause standard before obtaining an expansive two-week collection of the defendant’s historical CSLI records. 467 Mass, at 254.[2] Augustine does not establish a categorical rule barring use of the reasonable suspicion standard in authorizing production of historical CSLI pursuant to a §2703(d) order. See id. The decision strongly suggests, consistent with Commonwealth v. Rousseau, 465 Mass. 372, 382 (2013), “that the duration of the period for which historical CSLI is sought will be a relevant consideration in the reasonable expectation of privacy calculus ...” Augustine, 467 Mass. at 245. The amount of time involved in tracking the individual’s movements will determine whether the order to produce historical CSLI posed a real threat to the individual’s privacy. Id. Some periods may be so brief that it cannot be reasonably expected that such imprecise and isolated pieces of data will provide any clear and meaningful understanding of a person’s comings and goings in public and private places. See id. at 251. “[I]t is only when such [electronic] tracking takes place over extended periods of time that the cumulative nature of the information collected implicates a privacy interest on the part of the individual who is the target of the tracking.” Augustine, 467 Mass. at 253, citing U.S. v. Jones, 132 S.Ct. 945, 955 (2012), and Rousseau, 465 Mass. at 382. An isolated sampling of a person’s general location can hardly track the particular pattern of his movements from which law enforcement could piece together an intimate picture of the individual’s daily life. See Augustine, 467 Mass. at 251. As the court recognized in Augustine, historical cell tower data, the categoiy of CSLI at issue in the present case, differs markedly in its intrusive potential from registration data. Id. at 238, n.19.[3]
Several courts have adopted a similar approach to analyze privacy concerns with respect to the collection of historical CSLI. What has been described as the “mosaic” theoiy of the Fourth Amendment, distinguishes between temporally constricted investigations that fail to pose a real threat to privacy interests and expansive investigations whose aggregate effect infringes on an individual’s reasonable expectation of privacy. U.S. v. Graham, 846 F.Sup.2d 384, 390-91 (2012). See Augustine, 467 Mass. at 254; U.S. v. *337 Maynard, 615 F.3d 544, 562 (D.C. Cir. 2010). Courts have analyzed the collection of historical CSLI and other electronic tracking data and found that the aggregation of what would otherwise be benign information constituted an intrusion into the defendant’s protected privacy right. See U.S. v. Davis, 754 F.3d 1205, 1213-15 (11th Cir. 2014), reh’g en banc granted (obtaining voluminous CSLI records violates an individual’s reasonable expectation of privacy); Maynard, 615 F.3d at 558-62 (holding that GPS monitoring of an individual’s car is considered a search when surveillance is conducted for an extended period of time — in that case, a month); In re Smartphone Geolocation Data Application, 977 F.Sup.2d 129, 144-45 (E.D.N.Y. 2013) (reiterating the importance of the temporal length of the historical CSLI request); In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel., 849 F.Sup.2d 526, 542-43 (D.Md. 2011) (finding that prolonged surveillance reveals information not attainable during short periods of surveillance); In re U.S. for an Order Authorizing the Release of Historical Cell-Site Info., 809 F.Sup.2d 113, 117-20 (E.D.N.Y. 2011) (obtaining CSLI records for 113 days captures enough of the user’s location information for a long enough time to depict a detailed and intimate picture of the defendant’s movements). Compare In re U.S. for an Order Authorizing Release of Historical Cell-Site Info., 11-MC-0113 JO, 2011 WL 679925 (E.D.N.Y. 2011) (finding that staggered collection of CSLI records for a three-day period, a six-day period and a twelve-day period, were not as revealing as a sustained block of time and did not require a warrant).
In the case at bar, the Commonwealth obtained approximately twenty-nine hours of historical CSLI connected with the defendant’s cell phone. The records consisted of telephone call CSLI rather than registration CSLI. This distinction is significant because the telephone call CSLI in this case only indicated the locations of the defendant’s cell phone when it sent or received a call, and not the overly intrusive data produced by registration CSLI. Telephone call CSLI is far less accurate at pinpointing an individual’s movements and fails to pose the same potential for continuous and accurate tracking as registration CSLI.
The twenty-nine-hour period was narrowly circumscribed based on credible and material information concerning the execution of the attempted armed robbery and shooting and the defendant’s conduct and location before, during and after the crimes. This period constituted the period adjacent to the crimes, where knowledge of the defendant’s location could have uncovered evidence related to the defendant’s commission of the crimes. This period of time was too small of a sample size for the police to make any conclusions about the defendant’s habits or personal routine. The only information law enforcement could glean from these records was the defendant’s location immediately before, during and after the shooting and possible locations of where his sweatshirt and gun may have been hidden.
The case at bar differs from the facts of Augustine, where law enforcement collected approximately two weeks of continuous CSLI information connected to the defendant’s cell phone. 467 Mass, at 254. The constitutional violation in Augustine was predicated on the notion that aggregate collection of the defendant’s CSLI over a two-week period could enable law enforcement to monitor him in constitutionally protected areas and reconstruct the intimate details of his life. Id. at 247-49. See Maynard, 615 F.3d at 561-62.
The brief period in the present case was intended to identify the defendant’s location before, during and after the shooting, and to locate evidence that may have been hidden or partially destroyed after the commission of a crime. The request in the present case, derived from credible and material information, was so minimally invasive in terms of scope and duration that there was no real threat, or realistic possibility, that law enforcement could have tracked the defendant’s comings and goings to reconstruct his way of life. Accordingly, law enforcement’s collection of twenty-nine hours of the defendant’s CSLI records failed to implicate the defendant’s privacy interest.
Even if there was some government intrusion into the defendant’s privacy, “(t]he touchstone of a Fourth Amendment [and Article 14] analysis is reasonableness.” Commonwealth v. Nattoo, 452 Mass. 826, 832 (2009), citing Commonwealth v. Shields, 402 Mass. 162, 164 (1988). See also Commonwealth v. Roland R., 448 Mass. 278, 281 (2007). “There is no ready test for reasonableness except by balancing the need to search or seize against the invasion that the search or seizure entails.” Commonwealth v. Catanzaro, 441 Mass. 46, 56 (2004). Balancing the limited intrusion involved in collecting the defendant’s historical CSLI records against the interest in securing relevant evidence concerning the commission of an attempted robbery and homicide, and discovering the identify of the individuals involved, justified the reasonable suspicion standard set forth in 18 U.S.C. §2703(d). Accordingly, the Commonwealth lawfully obtained the CSLI records pursuant to the §2703(d) order.
Probable Cause Analysis
While emerging technologies continually test the boundaries of the probable cause analysis, we do know that “GPS data and historical CSLI are linked at a fundamental level: they both implicate the same constitutionally protected interest — a person’s reasonable expectation of privacy — in the same manner — by tracking the person’s movements.” Augustine, 467 Mass. at 254. To track an individual with GPS, the Commonwealth must establish “probable cause to believe that a particularly described offense has been, *338 is being, or is about to be committed, and that . . . [electronic] monitoring . . . will produce evidence of such offense or will aid in the apprehension of a person who the applicant has probable cause to believe has committed, is committing, or is about to commit such offense.” Commonwealth v. Connolly, 454 Mass. 808, 825-26 (2009) (establishing probable cause for GPS monitoring of a car where defendant used car extensively while conducting his drug business and GPS monitoring would likely produce evidence of drug transactions between the defendant, his business associates and his customers). See also Rousseau, 465 Mass. at 383-84 (finding probable cause for GPS warrant where the affidavit contained defendant’s criminal histories, details of a previous police investigation and information from a cooperating witness concerning the defendant’s commission of other crimes).
In Augustine, the Supreme Judicial Court held that the §2703(d) application would be reviewed to determine whether the “application for the §2703(d) order met the requisite probable cause standard of art. 14.” Augustine, 467 Mass, at 256. The Court defined probable cause as “probable cause to believe ‘that a particularly described offense has been, is being or is about to be committed and that [the CSLI being sought] will produce evidence of such offense or will aid in the apprehension of a person who the applicant has probable cause to believe has committed, is committing or is about to commit such offense.’ See Connolly, 454 Mass. At 825.” Id. Where “the judge determines that the probable cause standard is met, the defendant’s motion to suppress should be denied ...” Id.
The Commonwealth’s affidavit provided comprehensive detail of the circumstances surrounding the aborted robbery and shooting at the Petro-Mart. The affidavit provided a physical description of the defendant, his clothing during the commission of the crimes, the weapon he used and the individuals he met with before and after the crimes. Moreover, the affidavit sets forth witness statements indicating that the defendant stashed his gray sweatshirt and the gun somewhere in the vicinity of the Petro-Mart. The credible and highly material information contained in the Commonwealth’s affidavit provided a clear picture that obtaining historical CSLI records associated with the defendant’s phone would probably produce evidence relating to the aborted robbery and shooting, including the location of the gun used to commit the crimes, the defendant’s gray sweatshirt and his locations during and after the commission of the crimes. The defendant’s historical CSLI could have reasonably been expected to place the defendant at the scene of the crimes and indicate the areas where he may have hidden the gun and sweatshirt. The Commonwealth’s affidavit and application for the §2703(d) order met the requisite probable cause standard of art. 14.[4]
Exclusionary Rule
Application of the exclusionary rule is appropriate to remedy unreasonable searches and seizures only where the rule’s application would further the purpose of deterring police misconduct. Commonwealth v. Valerio, 449 Mass. 562, 569 (2007); Commonwealth v. Lett, 393 Mass. 141, 145 (1984). The court in Augustine noted that “neither the statute, 18 U.S.C. §2703(d), nor our cases have previously suggested that police must obtain a search warrant in addition to a §2703(d) order before obtaining an individual’s CSLI from his or her cellular service provider.”[5] Augustine, 467 Mass. at 257.
Here, the court is faced with conduct by the government that demonstrated a careful regard for legal requirements. The government sought the court order in full compliance with the requirements of §2703(d), as evidenced by the detailed affidavit filed in support of the order. Any over breadth in the scope of the order fails to amount to anything more than a marginal violation of the defendant’s reasonable expectation of privacy. See Commonwealth v. Gomes, 408 Mass. 43, 46 (1990) (holding that the fact that an unlawful search and seizure had occurred does not automatically require exclusion of any illegally seized evidence). Unlike the circumstances in Augustine, where the government may have had reason to appreciate the breadth of its request and hence its violation of privacy rights, the government in the instant case lacked any reason to believe that the information it obtained possessed the potential to produce an invasive profile of the defendant’s lifestyle. Accordingly, even if law enforcement failed to satisfy the requirements of Augustine, exclusion of the CSLI records would fail to further the purpose of deterring police misconduct and, therefore, exclusion of the CSLI would be misplaced. See Commonwealth v. Wilkerson, 436 Mass 137, 142 (2002).
ORDER
After reconsideration, the DENIAL of the motion to suppress stands.

The subpoena did not request registration data. Augustine, 467 Mass at 238, nn. 19, 21. The Commonwealth limited its request to telephone call CSLI, which exclusively monitored the cell phone’s location when the user either made or received a telephone call.

On the other end of the spectrum, “a period of six hours or less would not require the police to obtain a search warrant in addition to a §2703(d) order.” Augustine, 467 Mass at 254-55 n.37.

Historical cell tower data provides the approximate physical location of a cell phone when a call is either made or received. Registration data continuously monitors the location of a phone and provides a much more accurate and intrusive view of the cell phone’s location.

After a thorough review of the grand jury minutes, it is clear to the court that witness statements contained in the Commonwealth’s affidavit were taken directly from percipient witness’ testimony before the grand jury. Moreover, each testifying witness was identified by name. The identities of eyewitnesses were not exposed at the grand jury stage of the *339 investigation to presumably prevent witness harassment or intimidation. Witness statements before the grand jury constituted detailed accounts. Viewed in their entirety, the statements by grand jury witnesses that have been described in this memorandum represented reliable statements. See Commonwealth v. Atchue, 393 Mass. 343, 347-49 (1984).

Moreover, the court concluded that, given the circumstances of the case, the decision to allow the defendant’s motion to suppress should be vacated in order for the motion judge to determine whether the §2703(d) application satisfied the probable cause standard. Augustine, 467 Mass, at 256.