APPEALS COURT 
 
 COMMONWEALTH vs. ANDREW A. PADILLA

 
 Docket:
 23-P-581
 
 
 Dates:
 October 2, 2024 - December 20, 2024
 
 
 Present:
 Plymouth
 
 
 County:
 Massing, Henry, & Grant, JJ.
 

 
 Keywords:
 Controlled Substances. Narcotic Drugs. Firearms. Constitutional Law, Search and seizure. Search and Seizure, Warrant, Affidavit. Practice, Criminal, Motion to suppress, Warrant, Affidavit.
 
 

       Indictments found and returned in the
Superior Court Department on June 11, 2019. 
      Pretrial motions to suppress evidence were
considered by Cornelius J. Moriarty, II, J., and motions for reconsideration
were considered by him; a motion to dismiss was heard by Brian A. Davis, J.;
and conditional pleas were accepted by William F. Sullivan, J.
      Patrick J. Noonan for the defendant.
      Arne Hantson, Assistant District Attorney,
for the Commonwealth.
      GRANT, J. 
Based on an affidavit describing two controlled purchases of unspecified
"narcotics," police obtained a warrant to search the defendant's home
for "[a]ll controlled substances which have been . . .
distributed . . . in violation of [G. L.
c.] 94C."  In this appeal from
a conditional guilty plea, we conclude that, to meet the particularity
requirements of the Fourth Amendment to the United States Constitution, art. 14
of the Massachusetts Declaration of Rights, and G. L. c. 276,
§ 2, the search warrant was required to specify the controlled substance
or substances for which police alleged they had probable cause to search.  Because neither the search warrant nor its
supporting affidavit specified any such substance, the search warrant lacked
particularity, and thus the evidence should have been suppressed.
      Background.  The affidavit supporting the search warrant
application, sworn to by Brockton Police Detective Brian M. Donahue, provided
the following information.  In February
2019, a confidential informant (CI) told Donahue that a man, whose appearance
the CI described, was selling narcotics from the second-floor apartment at a
certain address.  Donahue obtained from
the Registry of Motor Vehicles database a photograph of the defendant, who
lived in a multifamily dwelling at that address, and, from the photograph, the
CI identified the defendant as the seller. 
Donahue's affidavit did not disclose specifically what substance or
substances the CI said that the defendant was selling, but stated generally
that he was selling "narcotics (such as cocaine, heroin, marijuana, and/or
prescription medications like oxycodone hydrochloride pills)."
      During March 2019, the CI made a
controlled purchase from the defendant at the apartment, using the following
procedure.  Police determined that the CI
was not in possession of any controlled substances or money, and then gave the
CI an unspecified amount of money.  While
Donahue and other officers conducted surveillance outside the dwelling, the CI
entered through a rear door and emerged five to ten minutes later.  The CI met police at another location and
handed over a substance that the CI had purchased from the defendant for the
money police had provided.  Again
Donahue's affidavit did not disclose what substance the CI purchased, but
identified it only as "narcotics (such as cocaine, heroin, marijuana,
and/or prescription medications like oxycodone hydrochloride pills)."
      On or about March 24, 2019, the CI made a
second controlled purchase from the defendant at the apartment, using the same
procedure.  Once again Donahue's
affidavit did not disclose what substance the CI purchased, but stated that it
was "narcotics" from the same list of categories.  Donahue averred that he "intentionally
withheld some of the details of the controlled buys . . . such as
specifically identifying the narcotic purchased by [the] CI" in order to
protect the identity of the CI, who had expressed safety concerns to police.[1]
      Based on that information, on March 25,
2019, an assistant clerk issued a warrant authorizing police to search the
defendant's apartment for "[a]ll controlled substances which have been
. . . distributed . . . in violation of [G. L.
c.] 94C," as well as materials and equipment used in their
distribution, records of their distribution, and "[a]ll money"
obtained from their sale.  Police
executed the search warrant and seized items including cocaine, amphetamine
pills, oxycodone pills, marijuana, a .22 caliber Beretta pistol, ammunition,
and cash.
      The defendant was indicted for trafficking
in cocaine, possession with intent to distribute both class B substances
(amphetamines and oxycodone) and a class D substance (marijuana), and offenses
arising from the unlawful possession of the firearm and ammunition.  The defendant moved to suppress, arguing,
among other things, that the search warrant affidavit did not set forth
probable cause because it omitted "the type of drug(s)" the CI
purchased from the defendant.  A Superior
Court judge denied the motion.  After
unsuccessfully seeking both reconsideration and an interlocutory appeal, the
defendant filed a second motion to suppress evidence, arguing that the search
warrant did not describe with particularity the property to be seized.  The judge denied the motion, ruling that under
Mass. R. Crim. P. 13, as appearing in 442 Mass. 1516 (2004), the
defendant had waived that argument by not raising it in his first motion.  Again the defendant unsuccessfully sought
both reconsideration and an interlocutory appeal.  The defendant also filed a motion to dismiss,
alleging that the Commonwealth had lost or destroyed exculpatory evidence,
which a different Superior Court judge denied.
      The defendant entered pleas of guilty
conditioned on his retaining the right to appeal from the denials of both
motions to suppress and the motion to dismiss.[2]  See Mass. R. Crim. P.
12 (b) (6), as appearing in 482 Mass. 1501 (2019).  This appeal followed.
      Discussion.  Particularity requirement.  The Fourth Amendment provides that "no
[w]arrants shall issue, but upon probable cause . . . and
particularly describing the . . . things to be seized."  Article 14 requires that all warrants be
"accompanied with a special designation of the . . . objects of
search . . . or seizure."[3] 
General Laws c. 276, § 2, provides that "[s]earch
warrants . . . shall particularly describe the property or articles
to be searched for."  "By
defining and limiting the scope of the search, these constitutional and statutory
particularity requirements prohibit general warrants amounting to 'exploratory
rummaging in a person's belongings.'" 
Commonwealth v. Molina, 476 Mass. 388, 394 (2017), quoting Coolidge v.
New Hampshire, 403 U.S. 443, 467 (1971). 
They also provide a written document based on which a defendant may
challenge the breadth of the search.  See
Commonwealth v. Holley, 478 Mass. 508, 524 (2017).
      1. 
"All controlled substances" distributed in violation of
G. L. c. 94C.  The defendant
argues that the search warrant's description of the items sought as "[a]ll
controlled substances which have been manufactured, delivered, distributed,
dispensed or acquired in violation of [G. L. c.] 94C" violated
constitutional and statutory particularity requirements.  In the circumstances of this case, we agree.
      The degree of specificity of a warrant's
description of the items to be searched for may vary according to the
circumstances and the type of items involved. 
See Commonwealth v. DePina, 75 Mass. App. Ct. 842, 847 (2009).  See also E.B. Cypher, Criminal Practice and
Procedure § 5:107 (4th ed. 2014). 
Ordinarily, a search warrant for a controlled substance that is being
illegally possessed or distributed must name the substance for which police
have probable cause to search.  See
Commonwealth v. Fernandes, 30 Mass. App. Ct. 335, 340 (1991) ("any other
illegally kept controlled drugs" impermissibly broad).  The description of the controlled substance
sought need not be elaborate; its name suffices.  See J.A. Grasso, Jr., Suppression Matters
Under Massachusetts Law, § 7-6[a][1][v] (2023 ed.) ("Controlled
substances may be referred to by name, e.g., heroin, cocaine, marijuana").
      Catch-all categories like "any and
all controlled substances" are impermissible because they delegate too
much discretion to the officers executing the search warrant.  See Fernandes, 30 Mass. App. Ct. at 340.  A warrant permitting police to seize such a
broad category would be subject only to the officers' on-the-scene
determination whether any substance they found was possessed in violation of
G. L. c. 94C.  See id.  Cf. Commonwealth v. Douglas, 399 Mass. 141,
144 (1987) (search warrant describing place to be searched as "premises to
be identified by Trooper Sullivan prior to execution of the warrant" did
not satisfy particularity requirements, because it "eliminate[d] the role
of the neutral and detached magistrate and substitute[d] a 'blank check' to be
filled in by a designated police officer").
      Where police can specifically describe the
controlled substance sought, they must do so. 
Cf. Commonwealth v. Taylor, 383 Mass. 272, 276 (1981) (description of
stolen property as "antique jewelry" not sufficiently
particular).  The police knew what
narcotic the CI bought, and so this was not a situation where they "did
not have information that would allow them further to limit the
description."  Commonwealth v.
McDermott, 448 Mass. 750, 770, cert. denied, 552 U.S. 910 (2007).  In such circumstances, less precision might
be acceptable.  See, e.g., Commonwealth
v. Henley, 488 Mass. 95, 119 (2021) (warrant to search cell phone for data
including contacts with persons, locations, or items associated with homicide
sufficiently particular); Commonwealth v. Freiberg, 405 Mass. 282, 299, cert.
denied, 493 U.S. 940 (1989) (warrant seeking blood, clothing, or "any
other instrument used in crime" sufficiently particular, where police did
not know what instrument caused victim's wounds).  See also, e.g., Molina, 476 Mass. at 396-397
(warrant to search all computers in apartment for child pornography not
overbroad, where data "could be easily transferred between devices"
and police "commendably" screened roommate's computer and promptly
excluded it from further search).
      Nor was this a situation where an
impermissible catch-all category in the list of items sought could be excised and
the remainder of the warrant would still establish probable cause to search for
at least one other listed item described with sufficient particularity.  Contrast Fernandes, 30 Mass. App. Ct. at
340-341 (in addition to impermissibly broad category of "any other
illegally kept controlled drugs," warrant also specifically sought
cocaine, and while police were permissibly searching for it they could seize
other contraband in plain view). 
Contrast Commonwealth v. Lett, 393 Mass. 141, 147-148 (1984) (warrant authorized
search for diamond ring and heroin; though authorization to search for heroin
was invalid, police could seize it in plain view during search for ring).
      The Commonwealth argues that any lack of
particularity in the search warrant as to the description of the items sought
was cured by the affidavit.  The argument
is unavailing, for two reasons.  First,
"[t]he Fourth Amendment by its terms requires particularity in the
warrant, not in the supporting documents." 
Groh v. Ramirez, 540 U.S. 551, 557 (2004), citing Massachusetts v.
Sheppard, 468 U.S. 981, 988 n.5 (1984), S.C., 394 Mass. 381 (1985).  See Commonwealth v. Brown, 68 Mass. App. Ct.
261, 268 (2007).  In circumstances where
a search warrant affidavit "is physically attached to the warrant and
present when the search is executed," the affidavit may "cure[] the
particularity deficiency in the warrant." 
Commonwealth v. Valerio, 449 Mass. 562, 567-568 (2007).[4]  See Holley, 478 Mass. at 524 n.21.  Here, however, the Commonwealth did not carry
its burden of demonstrating that the affidavit was attached to the search
warrant or present at its execution.  See
Valerio, supra at 568.  The preprinted
search warrant form did state that the affidavit "is hereby incorporated
by reference."  But the affidavit
did not state that a copy of the affidavit was attached to the search warrant,
or that police would have a copy of the affidavit present at the search.[5]  Nor did the Commonwealth present any such
information to the motion judge. 
Contrast id. at 572 (affidavit was paperclipped to warrant when it
issued, and available to police during search). 
Where the affidavit was not shown to be present during the execution of
the search, it did not limit the scope of the police search.  See Commonwealth v. Forish, 61 Mass. App. Ct.
554, 560-561 (2004).
      Second, even if the Commonwealth had shown
that the affidavit was present at the search, its language did not specify the
substance sought with particularity.  The
Commonwealth argues that the affidavit's description of the substance was
sufficiently particular because it named four narcotics -- cocaine, heroin,
marijuana, and oxycodone hydrochloride. 
The problem with the Commonwealth's argument is that it is contradicted
by the very words of the affidavit: 
Donahue averred that he "intentionally withheld" information
"specifically identifying the narcotic" that the CI bought.  See Commonwealth v. Du, 495 Mass. 103,
106-107 (2024) (rejecting Commonwealth's argument that recordings were not
"secret[]," where detective testified that they were "kept
secret").
      Beyond that, the affidavit did not
particularly identify the substance sought. 
It listed "narcotics (such as cocaine, heroin, marijuana, and/or
prescription medications like oxycodone hydrochloride pills)" (emphases
added).  Apparently focusing on the
phrase "such as cocaine" listed first, the motion judge referred in
his memorandum of decision to the substance that the CI had purchased in the
second controlled purchase as "cocaine."[6]  If the affidavit had named only a single
substance, we could perhaps overlook as inartful drafting the use of the
catch-all "such as," "and/or," and "like."  Cf. Commonwealth v. Byfield, 413 Mass. 426,
430 (1992) (search warrant for cocaine supported by affidavit stating that in
controlled purchase informant bought a "forty," which in "common
parlance of the drug trade" meant cocaine, and was substance informant
previously bought).  But because the
affidavit listed four different kinds of narcotics without disclosing which one
the CI bought, it could not have cured the catch-all description on the face of
the search warrant.
      As mentioned, Donahue averred in the
affidavit that he was justified in not "specifically identifying the
narcotic" that the CI bought, because doing so might reveal the identity
of the CI.  To be sure, an affidavit in
support of a search warrant may establish probable cause without including
every detail of a controlled purchase.[7] 
But, other than Donahue's conclusory statement, the affidavit did not
demonstrate that naming the narcotic that the defendant sold to the CI would
have tended to identify the CI.  Indeed,
it did not establish probable cause that the defendant sold any other substance
to anyone other than the CI.  Moreover,
the affidavit specified the date of the second controlled purchase as "on
or about March 24, 2019," which would likely be more revelatory of the
CI's identity than would the name of the narcotic.  Cf. Commonwealth v. Dilworth, 494 Mass. 579,
590 (2024) (rejecting argument that disclosure of police Snapchat profiles was
akin to disclosure of identity of confidential informant).[8]
      The lack of particularity in a search
warrant's description of the items sought could conceivably be justified by
other circumstances set forth in an affidavit. 
Here, however, the supporting affidavit did not include any information
that might have established probable cause that the defendant was selling
controlled substances other than whatever narcotic the CI bought.  For example, the affidavit did not describe
any police surveillance of the dwelling, other than during the controlled
purchases, or give any reason why such surveillance would have been
impractical.[9]  It did not describe any
attempts by police to seek a search warrant for a pole camera, see Commonwealth
v. Mora, 485 Mass. 360, 376 (2020), or conduct trash pulls, see Commonwealth v.
Matias, 440 Mass. 787, 793-795 (2004). 
It did not say whether anyone who lived at or frequented the apartment
had convictions for drug offenses, see Commonwealth v. Ponte, 97 Mass. App. Ct.
78, 82 (2020).[10]  It did not seek
permission to search for documents evidencing the possession, custody, or
control of the apartment, which would ordinarily be evidence of a possessory
crime, see Molina, 476 Mass. at 391.[11] 
It did not state that the affidavit was being drafted while events were
rapidly unfolding, which might be grounds for a reviewing court to overlook
minor mistakes, see Commonwealth v. Alvarez, 422 Mass. 198, 208 (1996).  It did not say whether the street value of the
narcotic that the CI bought in each of the controlled purchases was consistent
with the amount of cash that police had provided to the CI -- information that
would not likely have jeopardized the disclosure of the CI's identity.  "If we were ever to accept as lawful
such a broad description of [the items] to be searched [for] as appeared in
this search warrant, the circumstances would have to be far more pressing than
this record shows."  Douglas, 399
Mass. at 145.
      2. 
Equipment, records, and money used in distributing controlled
substances.  Because the search warrant
did not specify the controlled substance sought, it also lacked particularity
in describing the accoutrements of the distribution of that substance.  The search warrant sought "[a]ll materials,
products, and equipment of any kind which are used, or intended for use, in
. . . distributing . . . any controlled substance in
violation of [G. L. c.] 94C," "[a]ll books, records, and
monies used or intended for use in the . . . distribution of any
controlled substance in violation of [G. L. c.] 94C," and
"[a]ll money, which is the proceeds of the sale of any controlled
substance."
      As discussed, the Commonwealth did not
establish that the affidavit was present at the search, and so the affidavit
did not cure any deficiencies in the description of items on the face of the
warrant.  See Forish, 61 Mass. App. Ct.
at 560-561.  But even if we were to
consider the affidavit, it would not cure those deficiencies.  Because the affidavit was insufficiently
particular as to the description of the narcotic the CI bought, it was also
insufficiently particular as to the description of records or proceeds of sales
of whatever that narcotic was.  Contrast
Commonwealth v. Lima, 80 Mass. App. Ct. 114, 118-119 (2011) (affidavit
describing ongoing business, including two controlled purchases of cocaine at
stash house, established probable cause that records and proceeds of sales
would be at defendant's home).
      Conclusion.  The order denying the defendant's motion to
suppress evidence seized pursuant to the search warrant is reversed.[12]
So ordered.
 
footnotes
 
[1] In this
sentence Donahue used the word "narcotic," singular; elsewhere in the
affidavit he used "narcotics," plural.  Our holding does not turn on whether the CI
bought one unspecified controlled substance or more than one, and so the
discrepancy is not material to our analysis.
 
[2] Because the
defendant's first motion to suppress raised the question whether the search
warrant affidavit described "the type of drug(s)" the CI purchased,
the judge and the Commonwealth were on notice that the defendant was
challenging the particularity of the search warrant.
 
[3] In the
determination of probable cause, "art. 14 provides more substantive
protection to criminal defendants than does the Fourth Amendment."  Commonwealth v. Upton, 394 Mass. 363, 373
(1985).  However, as to the description
of the items to be searched for, the Supreme Judicial Court has not held that
art. 14 requires greater particularity than the Fourth Amendment.  See Commonwealth v. Walsh, 409 Mass. 642,
644-645 (1991), citing Commonwealth v. Sheppard, 394 Mass. 381, 389 (1985).
 
[4] The holding
in Valerio may appear somewhat at odds with the oft-cited principle of law that
"[w]hen considering the sufficiency of a search warrant application, our
review begins and ends with the four corners of the affidavit" (quotation
and citation omitted).  Commonwealth v. Long,
482 Mass. 804, 809 (2019).  When
considering the particularity of the description of the items to be searched
for, our review begins with the face of the search warrant.  It expands to the affidavit as permitted in
Valerio only if the affidavit was present at the execution of the search and
used to limit its scope.
 
[5] Because
G. L. c. 276, § 2B, requires that the person issuing the warrant
"shall retain the affidavit," the better practice would be for the
affiant to make an additional copy of the affidavit and staple it to the search
warrant form before presenting the application to the magistrate.
 
[6] At the
hearing on the motion to suppress, defense counsel did refer to cocaine as a
substance that police had seized previously from a different apartment in the
building, but there was no mention of cocaine as the substance that the CI
bought from the defendant.
 
[7] Donahue also
averred that he had withheld information about the "weights, packaging,
and prices of the narcotics" in order to protect the identity of the
CI.  "[T]he absence of this
information is not fatal to a determination of probable cause."  Commonwealth v. Andre-Fields, 98 Mass. App.
Ct. 475, 486 (2020).
 
[8] We are
concerned here with the particularity of the search warrant's description of
the items sought, and not with disclosure of the identity of the CI during the
pretrial discovery process.  See
Commonwealth v. Whitfield, 492 Mass. 61, 69-71 (2023); Commonwealth v.
Pena-Lara, 104 Mass. App. Ct. 680, 686-688 (2024).
 
[9] In seeking
permission for police to execute the search warrant without knocking and
announcing their presence, the affidavit stated that occupants of the apartment
would be alerted to the approach of police by security cameras on the outside
of the building.  However, the affidavit
did not tie those facts to any difficulty in conducting ongoing
surveillance.  In fact, the affidavit
stated that the Brockton police were working with a task force that included
State police, which presumably would have access to resources such as unmarked
vehicles that could be used in surveillance.
 
[10] At oral
argument, counsel informed us that the defendant had no criminal record.  If police learn that the target of an
investigation has no criminal record, the better practice would be to say so in
the affidavit.
 
[11] Despite the
lack of authorization to seize such documents, the search warrant return shows
that police seized the defendant's mail.
 
[12] Deciding the
case as we do, we need not reach the defendant's arguments that the affidavit
did not demonstrate the veracity of the CI, or that the indictments should have
been dismissed for loss of exculpatory evidence.